**UNITES STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| ) | |
| WANYU ZHANG ) | |
| 61 Pierce St., NE, Apt 1228 ) | |
| Washington, DC 20002, ) | |
| ) | |
| Plaintiff, ) | CASE NO: _____ |
| ) | |
| v. ) | VERIFIED COMPLAINT |
| ) | |
| NATIONAL PUBLIC RADIO, INC ) | NEXT HEARING DATE: _____ |
| _d.b.a._ NPR ) | |
| 1111 North Capitol St., NE ) | COURTROOM: _____ |
| Washington, DC 20002 ) | |
| ) | JURY TRIAL DEMANDED |
| Defendant ) | |
| ) | |
| Serve:    Corporation Service Company ) | |
| 1090 Vermont Ave., NW ) | |
| Washington, DC 20005 ) | |
| ) | |
| Reg. Agent for Defendant ) | |
| _____ ) | |

## VERIFIED COMPLAINT

COMES NOW the PLAINTIFF, Wanyu Zhang (hereinafter, "Plaintiff" or "Ms. Zhang"), by and through her undersigned counsel, Lev Ivan Gabriel Iwashko of The Iwashko Law Firm, PLLC, and complains of the DEFENDANT, National Public Radio, Inc. (hereinafter, "Defendant" or "NPR"), as follows:

### NATURE OF THE ACTION

1.      This is an action aiming to compensate Plaintiff for tortious actions committed by Defendant against Plaintiff during her employment at NPR, including, but not limited to: (1) violations by Defendant of Title VII of the Civil Rights Act of 1964 based on discrimination of Plaintiff by Defendant for refusing to accept a valid visa based on national origin or citizenship status; (2) violations by Defendant of Title VII of the Civil Rights Act of 1964, specifically

1

violations of the Immigration and Nationality Act of 1965 based on unfair documentary practices, due to Defendant not timely submitting H-1B visa application documents on behalf of Plaintiff, Defendant failing to properly perform the I-9 verification process, and Defendant unilaterally not accepting Plaintiff's proof of legal status in the U.S. despite the approval of Plaintiff's legal status in the United States from USCIS; (3) employer misconduct based on gross negligence with regard to Defendant's negligent handling of Plaintiff's H-1B visa application; (4) wrongful termination in violation of public policy due to Defendant terminating Plaintiff's employment based on factors that were the fault of Defendant, thereby preventing Plaintiff from enjoying her Federal rights under a valid visa granted to her by the state department; (5) promissory estoppel based on a breach of an implied contract between Plaintiff and Defendant, wherein Defendant clearly intended to keep Plaintiff as an employee at least until 2027; (6) fraudulent misrepresentation of information provided from Defendant to Plaintiff regarding her visa status and ability to travel to and from the United States; and (7) intentional infliction of emotional distress based on Defendant's manipulative and coercive treatment of Plaintiff during a time that she was mourning the death of her mother.

2.      The compensation requested by Plaintiff includes compensatory damages such as back pay, front pay, medical bills, and the like, punitive damages, attorney fees, legal costs, and any other relief deemed appropriate by this honorable Court.

3.      Enclosed herewith as Exhibit 1 is a Right to Sue letter from the Equal Employment Opportunity Commission (EEOC), noting that Plaintiff has until March 9, 2025 to file this Complaint (i.e., 90 days from December 9, 2025).

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction over this case, as per 28 U.S.C. §1331 and supplemental jurisdiction over the District of Columbia claims, as per 28 U.S.C. §1367.

5.    This Court may exercise personal jurisdiction over Defendant because Defendant does business in this District and has committed the tortious acts at issue in this Complaint in this District.

6.    Venue is proper in this District under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

7.    Plaintiff WANYU ZHANG is a private resident of the United States of America, and lives in the District of Columbia at 61 Pierce St., NE, Apt 1228, Washington, DC 20002.

8.    Defendant NATIONAL PUBLIC RADIO, INC is a District of Columbia corporation with over 1,000 employees, having an address of 1111 North Capitol St., NE, Washington, DC 20002.

## FACTS

9.    In 2009, at the age of eighteen (18) years old, Ms. Zhang moved from Beijing, China to the United States on an F1 Student Visa to pursue a Bachelor's degree in Telecommunications and Japanese at Indiana University Bloomington.

10.    After graduating from Indiana University in 2013, Ms. Zhang relocated to Washington, D.C. to pursue her professional career.

11.    On or about February 17, 2014, Ms. Zhang received her first Optional Practice Training (OPT) Visa through Indiana University Bloomington, and she began her first internship at National Public Radio (NPR) with NPR's Marketing Branding Communication division.

12.    From April 2014 through August 2014, Ms. Zhang participated in NPR's Brand Ambassador program as its first non-native speaker volunteer, where she led public tours, coordinated events at NPR headquarters, and supported the operations and promotions of the NPR Shop, thereby building her knowledge of public media and demonstrating her ability to navigate

cross-culture environments.

13.     On August 20, 2014, Ms. Zhang submitted her I-9 verification and identification documents to NPR for her first internship, which began on September 8, 2014.

14.     Between September 8, 2014 through December 12, 2014, Ms. Zhang secured her first full-time internship at NPR's Marketing Branding & Communication (MBC) department as a Consumer Product Intern, where she reported directly to Barbara Sopato, Senior Director of Consumer Products, and where she received a stipend of $4,900 for her work.

15.     On December 18, 2014, Ms. Zhang again submitted her I-9 verification and identification documents to NPR for her second internship, which began on January 12, 2015.

16.     From January 12, 2015 through May 1, 2015, due to her excellent performance during her first internship, Ms. Zhang was offered a second internship at the NPR Library as its first Marketing and Archives Intern, where she reported directly to Laura Soto-Barra (then Chief Librarian and now VP of NPR's Research, Archives & Data Strategy).

17.     During this time, on or about February 17, 2015, Ms. Zhang received a STEM OPT Visa extension at Indiana University Bloomington.

18.     Sometime between March 2015 and June 2015, Ms. Zhang again submitted her I-9 verification and identification documents to NPR for her first full-time temporary role, which began in June 2015.

19.     From June 2015 through December 2015, following the success of her second internship, Ms. Zhang transitioned into a full-time temporary role with NPR's Research, Archives & Data Strategy (RAD) team as Marketing Coordinator, earning a wage of $30/hour.

20.     From January 11, 2016 through December 19, 2017, Ms. Zhang was enrolled at Georgetown University to pursue a full-time master's degree at Georgetown University in Communication and Foreign Policy, and Ms. Zhang continued part-time support for the RAD

team and volunteered at NPR to maintain her contributions.

21.     On or about February 18, 2018, Ms. Zhang received her second OPT Visa through Georgetown University.

22.     Sometime during the beginning of 2018, Ms. Zhang again submitted her I-9 verification and identification documents to NPR for her second full-time temporary role, which began in February 2018.

23.     From February 2018 through September 2018, after completing her studies, Ms. Zhang returned to NPR's RAD team as a temporary Marketing Specialist, leading marketing and branding projects to support RAD initiatives and grant programs.

24.     On or about October 5, 2018, Ms. Zhang transitioned back to NPR's Marketing Branding & Communication (MBC) team as a full-time temporary employee, where she led the IMPACT projects, managed NPR's branding photoshoots, and reported directly to Creative Director Billy Candela, while her wage remained at $30/hour.

25.     From February 18, 2019 through February 17, 2021, Ms. Zhang held a STEM OPT Visa through Georgetown University, and Ms. Zhang continued to work at the same department at NPR until 2023, during which she progressed through five (5) promotions within her recent role as Brand Director of NPR.

26.     In March 2019, Ms. Zhang co-founded NPR Azns, the company's first Employee Resource Group (ERG) for Asian employees, alongside two other Asian employees. She also launched NPR's inaugural Asian American and Pacific Islander Heritage Month (AAPIHM) event in May 2019, aimed at fostering cultural awareness and celebrating heritage. However, just a few months later, during a one-on-one meeting with her supervisor at the time, Billy Candela, he ordered Ms. Zhang to cease working on any ERG-related initiatives, without providing any rationale for the decision.

27.     On or about July 22, 2019, Ms. Zhang was promoted to a full-time position as Marketing Associate, leading creative production efforts, and Ms. Zhang continued reporting to Creative Director Billy Candela, while her wage remained at $30/hour.  This also marked the last time NPR requested (and received) Ms. Zhang's I-9 verification and identification documents from Ms. Zhang, and provided guidance on STEM OPT requirements.

28.     From September 2019 through March 2020, after the unexpected departure of Senior Marketing Manager Carol Paik, Ms. Zhang was assigned additional responsibilities without prior notice or a salary adjustment. To meet the demands of her expanded workload, Ms. Zhang worked up to 12-hour days, which led to severe exhaustion, including an incident where she fainted during a workday dinner. While some minimal financial compensation was eventually provided after Ms. Zhang reached out to her HR Business Partner, Stacey Zikmund (who left NPR in early 2023), Ms. Zhang's salary and title were never adjusted to reflect the senior manager responsibilities she had already assumed.

29.     Also around March 2020, due to the COVID-19 pandemic, NPR shifted to a remote working policy, which led to a significant breakdown in communication between NPR's HR and Legal departments.

30.     On or about April 6, 2020, following the departure of former Chief Marketing Officer (CMO) Meg Goldthwaite (i.e., Ms. Goldthwaite had received multiple HR complaints against her), NPR's CEO, John Lansing, hired Michael Smith as the new CMO.

31.     The dismissal of the former Chief Marketing Officer (CMO) was, in part, a response to the long-standing issues related to the treatment of employees of color within the Marketing, Branding, and Communications (MBC) division. Over a span of two and a half years, seventeen (17) employees of color either quit, were fired, or were pushed out due to the toxic work environment created under the leadership of the CMO. For context, seven of the 17

employees of color who left NPR did so directly as a result of the discriminatory and hurtful actions of NPR's leadership.  In response to this, a "whisper network" has emerged among the remaining employees of color within the MBC. This network serves as a way to navigate the uncomfortable and discriminatory situations created by these leaders.  Despite the dismissal of the CMO, many employees within the MBC feel that the major issues contributing to a hostile work environment have not been fully addressed.  The departure of the CMO was seen as only a partial resolution, leaving the culture and the impact of these remaining leaders largely unchanged.

32.    Also in April 2020, NPR required Ms. Zhang to change her reporting status from Creative Director Billy Candela to Director of Marketing Kristin Hume, due to retaliatory behavior from Mr. Candela, who had refused to assign Ms. Zhang new tasks.

33.    From August 2020 through September 2020, Ms. Zhang and her entire team, all of whom were people of color at the time, collaborated on a collective document detailing their experiences with Mr. Candela and his creation of a hostile work environment. This document was shared with Kristin Hume, who was Mr. Candela's direct supervisor at the time.

34.    Mr. Candela resigned in September 2020 following multiple HR reports against him for discriminatory and abusive behavior.  The following points include examples of Mr. Candela's behavior, which contributed to the creation of a hostile work environment at NPR:

>    (A)    Unprofessional Language: During a project review for the TED Radio Hour new host transition campaign, Mr. Candela publicly criticized Ms. Zhang's work as "unacceptable and unprofessional" in front of multiple colleagues. When Ms. Zhang expressed concern that his words were unnecessarily harsh, Billy refused to acknowledge or apologize. Instead, he dismissed her concerns, suggesting that she was simply "mad" and blaming her for how his words were perceived, demonstrating a clear lack of professionalism,

empathy, and accountability.

(B)    Disregard for Feedback: Mr. Candela consistently disregards his team members' concerns and ideas, often dismissing them without explanation. When Ms. Zhang sought guidance after assuming Carol Paik's job responsibilities, Mr. Candela sent a vague email to various departments stating that Ms. Zhang had additional responsibilities but failed to provide any meaningful direction or support.

(C)    Failure to Recognize Contributions: Despite the team's efforts, Mr. Candela rarely expresses gratitude or acknowledges hard work. Ms. Zhang was required to draft her own job description multiple times, yet Mr. Candela never reviewed or provided feedback, leaving her without a formal title or job description for over nine months.

(D)    Obstruction of Career Growth: After Ms. Zhang demonstrated her ability and willingness to take on additional projects, Mr. Candela deliberately withheld new assignments. As a result, Ms. Zhang was left with no choice but to request a transfer to another team to escape this targeted obstruction.

(E)    Disparate Treatment: Ms. Zhang and other team members observed that white employees were promoted more quickly and received greater recognition despite having fewer responsibilities. Mr. Candela failed to address these disparities or provide a transparent path for career advancement, fostering a culture of inequity and exclusion.

(F)    Culturally Insensitive and Unprofessional Comments: Mr. Candela has made inappropriate remarks in front of his diverse team, including offensive comments about Indian food "making people stinky" and

8

questioning the hairstyles of a Black woman featured in creative assets.
These remarks contribute to a toxic work environment and reflect a
troubling lack of cultural awareness and sensitivity.

35.     On or about November 9, 2020, Ms. Zhang was promoted to Marketing Manager
under Kristin Hume with an annual salary of $82,450, which was the first salary increase Ms.
Zhang received since 2015.  Specifically, Ms. Zhang's hourly rate increased from $30/hour to
$40/hour.  In addition to her marketing responsibilities, Ms. Zhang also served as a
communication bridge between Kristin Hume and the creative team after Mr. Candela's
departure.

36.     On or about November 18, 2020, Ms. Zhang received NPR's inaugural Spark &
Impact Award, selected by peers from over a thousand employees. The award recognized her as
someone who "makes everything they touch better" and embodies NPR's mission and positive
company culture. This milestone highlighted Ms. Zhang's ability to inspire colleagues, drive
innovation and enhance organizational values through her work.

37.     On or about December 9, 2020, NPR expanded Ms. Zhang's responsibilities by
requiring her to contribute to NPR's Business Development team, focusing on international
distribution projects, while continuing her marketing duties. Ms. Zhang reported to Kristin Hume,
Sr. Director of Marketing & Branding and Dan McCoy, Sr. Director of Business Partnerships.
Despite the added responsibilities, Ms. Zhang's salary remained unchanged.  As a Chinese, non-
U.S. citizen employee, this kind of treatment, where Ms. Zhang was expected to take on more
work without compensation, was a recurring pattern throughout her time at NPR. This pattern
reflects a broader issue at NPR, where employees, especially women and people of color, are
often expected to contribute more without appropriate recognition or financial adjustment.

38.     In March 2021, Ms. Zhang was selected as an all-staff speaker on multiple

occasions to address issues faced by Women of Color at NPR, and she advocated for better recruitment, retention, promotion, and protection practices to ensure fair treatment and career advancement opportunities. Additionally, Ms. Zhang played a pivotal role in laying the groundwork for broader organizational improvements, particularly in business strategy and fostering an innovative workplace culture. As part of her efforts, she supported the creation of a detailed report highlighting the broader challenges faced by women of color at NPR, particularly from the perspective of someone who is not only a woman of color but also a non-U.S. citizen and non-native speaker. Ms. Zhang has consistently worked tirelessly in these areas.

39.    On or about May 10, 2021, Ms. Zhang was promoted to Senior Marketing Manager, with additional responsibilities in Business Development, and her salary increased from $82,450 to $95,060 annually (i.e., from $40/hour to $45/hour), though her remained lower than peers with fewer duties.

40.    From July 2021 through December 2021, Ms. Zhang's peer, Elyse Poinsett (a Caucasian female and Senior Member Station Marketing Manager), was promoted by Kristin Hume from Senior Marketing Manager to Director of Marketing, thereby becoming Ms. Zhang's supervisor for five months before transferring to the Development division. Ms. Zhang and her colleagues expressed confusion over Ms. Hume's decision, as it lacked transparency and justification. Following this promotion, Ms. Zhang received a call from CMO Michael Smith, who acknowledged that he believed she was fully capable of serving as a Director. However, he stated that she was "too young to manage a team," reinforcing an unfair and subjective barrier to her career advancement.

41.    On or about October 14, 2021, Ms. Zhang spearheaded the marketing strategy and agency partnership for NPR's first nationwide brand marketing campaign, "More Voices, All Ears", showcasing all of NPR's podcasts, and this campaign later earned Ms. Zhang a Webby

Honoree award for Best Campaign of the Year.

42.    In November 2021, Ms. Zhang achieved NPR's first-ever international intellectual property (IP) adaptation deal for How I Built This in Japanese, opening new business opportunities for NPR's global expansion.

43.    In December 2021, Ms. Zhang received another NPR award for her contributions to launching the culturally diverse project Where We Come From, which celebrated the immigrant's culture, histories, and communities of the U.S.

44.    From May 2021 through March 2022, Ms. Zhang served as a Union Steward representing the Audience Growth team (formerly Marketing Branding & Communication) during bargaining sessions with NPR's HR and legal divisions. As part of Digital Media United (DMU) under NABET-CWA Local 31, Ms. Zhang worked tirelessly to advocate for equal pay and workplace protections for non-supervisory employees, which included efforts that went beyond her day-to-day responsibilities.

45.    On or about April 11, 2022, Ms. Zhang was promoted to Brand Director, being the youngest and first Woman of Color employed in this role at NPR, which included an annual salary increase to $143,500.00.  NPR had publicly announced Ms. Zhang's promotion on April 8, 2022.  However, this promotion process deviated from NPR's standard practices, as Ms. Zhang had to draft her own job description, apply through the hiring system, attend multiple interviews, and secure the position despite already performing its duties for over six months. Upon assuming this role, Ms. Zhang received little support from NPR's HR department, as there was no recruiter due to an HR restructure, or her supervisor, Kristin Hume with regard hiring new designers or managing her expanded workload.

46.    Also in April 2022, Ms. Zhang had to step down from her position as DMU Union Steward due to conflicts between her supervisory role and union eligibility. Ms. Zhang was the

only person in the Audience Growth division of NPR (formerly Marketing Branding & Communication) with union steward experience, now carrying supervisory responsibilities.

47.     From May 2022 through September 2022, as a first-time people manager without HR recruiter and supervisor's support, Ms. Zhang personally handled the hiring process for two designers, posted job openings, vetted candidates, scheduled interviews, finalized paperwork, and onboarded new hires independently.

48.     In August 2022, Ms. Zhang was elected as a panel speaker at several national conferences to discuss NPR's brand strategy and global impact.

49.     In September 2022, Ms. Zhang led her team in launching NPR's first brand activation campaign in collaboration with world-renowned mural artists. The campaign included events and activations designed to engage directly with local communities and audiences.

50.     In November 2022, Ms. Zhang led the first-ever replica of the iconic Tiny Desk Concert set from NPR HQ to Long Beach at ComplexCon, expanding NPR's brand awareness on a broader global scale.

51.     In December 2022, Ms. Zhang finalized NPR's first custom typeface deal with the Colophon Foundry, strengthening the brand's identity across all touchpoints and eliminating ongoing licensing fees for long-term cost savings.

52.     In January 2023, Ms. Zhang led the publication of NPR's Podcast Startup Guide in Chinese. The first Chinese edition of this popular resource, to engage global podcast publishers and listeners. The book became a top seller in its category and a textbook for audio production majors at several Chinese universities.

53.     Also during this time, Ms. Zhang discovered that her mother was diagnosed with stage III lymphoma, following a previous battle with gynecological cancer in 2020, and she shared this matter with various her colleagues at NPR, including Mr. Stuart Harding (NPR's

attorney).

54.    In March 2023, Under Ms. Zhang's creative leadership, NPR partnered with a local

AAPI women-owned hair accessory brand, "Chunks," to launch a branded collaboration products

celebrating AAPIHM culture. The campaign featured AAPI hosts and staff members while

targeting younger and more diverse audiences for brand awareness and business growth.

55.    By May 2023, Ms. Zhang had been informed that her mother had already

undergone five rounds of intense chemotherapy, and had just survived a second ICU

hospitalization.  However, Ms. Zhang's mother's condition remained fragile, requiring ongoing

medical care, and Ms. Zhang wanted to visit her in Beijing.

56.    On or about May 15, 2023, NPR's attorney, Stuart Harding, requested I-9

verification and identification documents from Ms. Zhang for the first time since 2019. During

their discussion, it was made clear to Ms. Zhang that NPR valued her as a "star employee," and

was committed to supporting her, especially as she navigated her mother's illness in Beijing.  Mr.

Harding assured Ms. Zhang that he would seek advice from outside counsel to ensure she could

maintain her employment in the U.S. with NPR, and did not foresee any issues. Notably, Mr.

Harding had known Ms. Zhang since 2014 when she was an intern, and they had maintained a

strong professional connection.  Because of this long-standing trust, Ms. Zhang had no reason to

doubt Mr. Harding's assurances.

57.    On or about May 23, 2023, Ms. Zhang met with Mr. Harding one-on-one in his

office regarding her immigration status, and to discuss her desire to visit her mother in Beijing.

Due to the power imbalance and the lack of clear guidance from NPR's legal counsel, Ms. Zhang

felt pressured to rely on Mr. Harding's advice, despite an apparent new uncertainty surrounding

her immigration status and ability to work, as expressed by Mr. Harding.  Specifically, NPR

instructed Ms. Zhang to stop working while NPR handled her work visa application (i.e., H-1B

Visa), assuring her that this was the proper course of action.  Mr. Harding repeatedly emphasized the risk of an alleged 10-year travel ban with China, and the fact that she temporarily lacked legal authorization to work.  When Ms. Zhang asked if she could visit her critically-ill mother in Beijing, NPR made it clear that Ms. Zhang could not return to Beijing at this time, warning that if she left during the visa-approval process, Ms. Zhang would allegedly lose the opportunity to adjust her status.  Therefore, trusting NPR and Mr. Harding's guidance, Ms. Zhang complied with NPR's request to remain in the U.S., and as a result, she unfortunately missed the last three months of her mother's life.  To make matters worse, Ms. Zhang was unaware that NPR had already missed the cutoff for applying for an H-1B Visa, on her behalf, by over two years, which was a fact that was kept secret from Ms. Zhang until Ms. Zhang's attorney discovered (on January 10, 2024) that USCIS had mailed NPR a Change of Status Denial Letter on August 30, 2023.

58.     On or about May 24, 2023, Ms. Zhang participated in a brief phone call with Mr. Harding and NPR's hired immigration attorney Jake Campbell (from Seyfarth Shaw LLP) but received minimal clarity on her visa status or next steps.

59.     On or about May 25, 2023, Ms. Zhang was featured publicly on NPR Extra as part of the "Faces of NPR" series celebrating Asian American Pacific Islander (AAPI) Heritage Month, which was a recognition of her contributions to NPR's AAPI community and the network.

60.     During the week of May 22, 2023, Ms. Zhang held one-on-one conversations with key individuals at NPR, including Stuart Harding and Anika Steffen (NPR's labor attorney), Selyn Hong and Alaa El Koussaimi (HR representatives), Kristin Hume and Michael Smith (direct supervisors). Ms. Zhang also informed her direct reports and close colleagues about upcoming changes related to her visa situation.

61.     On or about May 31, 2023, Ms. Zhang began organizing paperwork requested by NPR's external counsel, Seyfarth Shaw LLP, to prepare her work visa application package.

14

62.    On or about June 2, 2023, Ms. Zhang sent an email to her close circle at NPR explaining her upcoming absence due to unresolved work visa issues while maintaining professionalism to ensure work continuity.

63.    On or about June 3, 2023, Ms. Zhang emailed NPR's legal team and Seyfarth Shaw lawyers confirming that she had completed all required paperwork and forms for her visa application.

64.    On or about June 5, 2023, Ms. Zhang ceased working at NPR and lost access to email and Slack accounts. An out-of-office message was maintained directing inquiries to her supervisor, Kristin Hume, and Human Resources Business Partner (HRBP) Alaa El Koussaimi. Since that day, Ms. Zhang has been unable to access her NPR accounts or return to her office. To this day, NPR continues to hold Ms. Zhang's personal belongings without returning them to her.

65.    On or about June 12, 2023, Ms. Zhang's HRBP, Alaa El Koussaimi, texted her with a "friendly heads-up," stating that she didn't want Ms. Zhang to be alarmed and that NPR was only documenting the June 2 action. Later that day, NPR issued a formal separation letter stating that Ms. Zhang's employment had officially ended effective June 2, 2023, due to her inability to complete the required I-9 verification.  In reality, the HR team at NPR had failed to handle the visa process in a timely manner, and the HR system did not flag the re-verification requirement due to their negligent oversight in 2020.  Additionally, the HR personnel responsible for overseeing the I-9 process had left NPR, a fact Ms. Zhang only discovered on January 10, 2024, through the aforementioned USCIS Change of Status Denial Letter.

66.    On or about June 20, 2023, NPR received the Labor Condition Application (LCA) approval from the Department of Labor, indicating a period of employment from June 26, 2023, to June 25, 2026. This made it clear to Ms. Zhang that NPR intended to arrange her work visa for this period, confirming their plan to employ her under an H-1B visa.

67. On or about June 28, 2023, with permission from Stuart Harding, Ms. Zhang returned to NPR headquarters to participate in the launch of her initiated project, All Things Considered Gelato, in collaboration with a local D.C. gelato brand.

68. On or about June 29, 2023, Ms. Zhang attended a farewell party for a former NPR employee in Georgetown. This was also her last in-person conversation with Mr. Harding.

69. On or about July 12, 2023, USCIS received Ms. Zhang's H-1B petition and issued a receipt number. On the same day, her mother was admitted to the ICU in Beijing due to severe lung complications. NPR submitted the H-1B petition on Ms. Zhang's behalf, as it is well-known that only an employer can act as the petitioner for an H-1B work visa. They retained Seyfarth Law Firm to handle the petition process on their behalf. However, Ms. Zhang was responsible for preparing the submission package according to their requirements. Despite her direct involvement, NPR never shared the cover letter or the rest of the petition package prepared for her case, leaving her without full visibility into the details of her own application.

70. On or about July 13, 2023, Ms. Zhang completed the DS-160 visa form independently and updated Mr. Harding on its completion.

71. On or about July 19, 2023, USCIS issued a Request for Evidence (RFE) regarding Ms. Zhang's H-1B petition to NPR's external counsel. Despite Ms. Zhang's attempts to assist or understand the reasons for the RFE, she was not provided with any details from NPR. Notably, it was not until January 10, 2024 that NPR finally shared the USCIS Change of Status Denial Letter with Ms. Zhang's attorney, and in April 2024, NPR disclosed its EEOC position statement. Through this, Ms. Zhang learned that USCIS had denied the petition due to NPR's HR administrative errors during the I-9 verification, a fact that NPR kept hidden from Ms. Zhang. Specifically, the denial was based on USCIS's refusal to forgive NPR's mistakes, resulting in the Change of Status Denial Letter. According to AFM 30.3(d), *"If a change of status application is*

*filed to change status to a nonimmigrant work category (E, H, L, O, P, Q, R, or TN), the Form I-129 petition will be adjudicated before the change of status application. If the Form I-129 is approved, USCIS will then determine if the change of status application is approvable. If the Form I-129 is approved but the change of status is denied, the alien will be required to obtain the immigrant visa from a consulate abroad."* In Ms. Zhang's case, her I-129 petition was approved, but NPR failed to inform her of the Change of Status Denial in a timely manner.

72.     On or about August 10, 2023, Ms. Zhang's final national brand campaign for NPR, "Black Stories. Black Truths", which she wholeheartedly led and managed from January to June, was successfully launched.

73.     On or about August 11, 2023, Ms. Zhang scheduled a U.S. embassy appointment for August 31 using her DS-160 form number, and Ms. Zhang's mother assisted with payment through a Chinese online wallet, despite being critically ill.

74.     On or about August 18, 2023, Ms. Zhang sent an urgent email to Mr. Harding requesting expedited action due to her mother's deteriorating condition but did not receive a response.

75.     On or about August 22, 2023, NPR's external counsel submitted the RFE response to USCIS.

76.     On or about August 25, 2023, Ms. Zhang received a confirmation from USCIS regarding receipt of the RFE response.  NPR and Seyfarth Law Firm received the Request for Evidence (RFE) receipt, but never disclosed it to Ms. Zhang. The only way Ms. Zhang became aware of the RFE was through the Case Tracker app, which allows users to track case progress using a case number and provides a detailed timeline.

77.     On or about August 29, 2023, tragically, Ms. Zhang's mother passed away in Beijing at 7:34 AM EST. She immediately informed her supervisor, Kristin Hume, and requested

assistance in notifying NPR's legal and HR teams. Later that night, Mr. Harding called Ms. Zhang

to provide updates and promised a written follow-up, but Ms. Zhang never received any email or

text updates from Mr. Harding.  As a non-native English speaker grieving the loss of her mother,

Ms. Zhang was left to process complex legal terms and jargon on her own while in a devastated

state. Without the promised written follow-up, it was extremely difficult for Ms. Zhang to fully

understand the details of the situation, and Ms. Zhang felt abandoned by NPR.

78.     On or about August 30, 2023, Ms. Zhang discovered conflicting updates on

USCIS's portal showing both approval and denial notices for her H-1B petition, which confused

Ms. Zhang, so she reached out to Mr. Harding via text message for clarification.  Mr. Harding

stated that Ms. Zhang's petition was approved, but then claimed there were uncertainties about

her ability to return to the U.S., citing an alleged travel ban. However, Mr. Harding had lied to

Ms. Zhang, as there was no travel ban in place at that time, and Mr. Harding was instead

attempting to conceal the truth from Ms. Zhang, that NPR had actually missed the filing deadline

for Ms. Zhang's Form I-129, Petition for a Nonimmigrant Worker, by 877 days, thus resulting in

a denial of change of the status from USCIS.  Even on August 30, 2023, when USCIS issued both

the I-129 approval email and the Change of Status Denial Letter, neither Mr. Harding nor NPR's

hired legal counsel shared these documents with Ms. Zhang.  It was only at the last minute, just

before her U.S. embassy interview on September 12, 2023, that NPR finally disclosed the

approval email.  Furthermore, they actively withheld the Change of Status Denial Letter from Ms.

Zhang until after she retained legal representation and sent an official demand letter on January

10, 2024, making it evident that NPR was deliberately hiding their negligent error.  From this

point forward, Ms. Zhang noticed a stark shift in NPR's legal and HRBP team's behavior toward

her.  Notably, her HRBP, Alaa El Koussaimi, who had previously been in contact, never reached

out to her again, which was curiously on the very same day NPR realized that USCIS had refused

to overlook their HR team's negligent mistake.

79.    On the evening of August 30, 2023, Ms. Zhang booked a flight to Beijing for August 31, 2023 at 10:55 AM to attend her mother's funeral on September 3, 2023. The last time Ms. Zhang had physically seen her mother was in March 2019.

80.    On or about September 12, 2023, at 8:30 AM, Ms. Zhang attended her U.S. embassy visa interview in Beijing.  Despite multiple attempts to contact Mr. Harding since August 31, 2023 regarding the USCIS approval notice email, which was essential for entry into the embassy, she only received a copy from him at 6:54 AM on the morning of her interview. This approval email was critical as it contained details about her visa status. Instead of the standard three-year H-1B work visa period, USCIS had issued the H-1B Visa that was going to be valid for less than six months, specifically from August 30, 2023 through February 17, 2024, a span of just 171 days. This shortened duration resulted from USCIS's calculation using Ms. Zhang's STEM OPT end date of February 17, 2021, which retroactively started the clock from February 18, 2021 through August 30, 2023, totaling 924 days.  By adding 171 days, USCIS reached a total of 1,095 days, which is exactly three years.  In other words, USCIS granted Ms. Zhang an H-1B Visa that was retroactively valid from February 18, 2021 through February 17,2024.  This explanation clarifies that USCIS did in fact account for the full three-year term in the backend calculations, despite NPR's claims to the contrary.  Without the approval email, Ms. Zhang would not have been allowed entry into the U.S. Embassy.  After enduring a four-hour interview process, she successfully received an approval notice from the consular officer.

81.    During the time from September 15, 2023 through September 17, 2023, Ms. Zhang received her passport with a valid visa stamp, which was valid from September 15, 2023 through February 17, 2024, after completing additional checks by the U.S. embassy, and shared this information with Mr. Harding.

82.     On or about September 20, 2023, NPR's external counsel, Jake Campbell, raised concerns about Ms. Zhang's DS-160 visa form responses, specifically questioning her answers related to "overstay and unlawful presence."  They singled out one question from over a hundred on the form, which she had completed on July 13, 2023, the day after her mother was admitted to the ICU.  The timing and nature of their inquiry appeared to be an attempt to pressure and confuse Ms. Zhang into providing specific answers without proper context or support.  This was also the first time NPR questioned Ms. Zhang's DS-160 form, but only after NPR had learned that she had successfully obtained a valid H-1B visa stamp through the U.S. Embassy in Beijing.  At the time, Ms. Zhang was unaware of her right to seek independent legal counsel or that NPR's sudden scrutiny of her form may have been intended to create a legal pretext for her termination.  She was extremely confused and anxious, and wondered why, after she had already secured the visa sponsored by NPR, and while she was mourning her mother's passing, was NPR now trying to intimidate her?  NPR's approach also revealed a clear lack of understanding of how U.S. embassies handle visa appointments and interviews abroad.  Ms. Zhang had successfully navigated nearly ten (10) visa interviews in the past, yet NPR's legal team acted as though they had no experience with the process, further highlighting their incompetence and bad faith.

83.     On or about September 23, 2023, Ms. Zhang booked a return ticket to Washington D.C., scheduled for September 30, 2023, and informed Mr. Harding of her travel plans.

84.     During the time September 27, 2023 through September 29, 2023, Mr. Harding sent an email followed by a text indicating that NPR might need to restart the visa process entirely but ignored multiple clarification requests from Ms. Zhang before her international trip.

85.     On or about September 30, 2023, Ms. Zhang departed Beijing via Korean Airlines without encountering any issues during check-in, APIS (Advance Passenger Information System) screening, or border control.  She transited through Seoul while *en route*

to Washington, D.C.  If a travel ban had been in place, it would have been enforced through APIS, a system used by airlines and immigration authorities to pre-screen passengers for travel restrictions before they are allowed to board.  APIS is specifically designed to flag individuals with outstanding immigration issues, including travel bans.  Given that Ms. Zhang was permitted to check in, pass APIS screening, and board her flights without incident, this directly contradicts NPR's false claims about her being subject to a travel ban. This further underscores NPR's pattern of misinformation and intimidation, as they knowingly misled Ms. Zhang about her immigration status in an apparent attempt to manipulate or obstruct her return to the U.S.

86.     On or about October 1, 2023, Ms. Zhang arrived at Washington Dulles International Airport (IAD), where U.S. Customs and Border Protection (CBP) officers raised no concerns about her entry, visa status, or admissibility.  She was lawfully admitted into the United States and obtained a new I-94 record without incident.  If there had been any immigration issues or travel restrictions, CBP officers would have flagged them during inspection.  The I-94 form, issued upon arrival, serves as official confirmation of lawful entry and immigration status.  Since Ms. Zhang was processed without delay or further questioning, this directly refutes any claim by NPR that she faced legal barriers to re-entering the U.S.  This further reinforces the lack of credibility in NPR's assertions regarding her immigration status and work authorization, demonstrating a pattern of misrepresentation and misinformation.

87.     On or about October 4, 2023, NPR's attorney, Stuart Harding, informed Ms. Zhang via email and telephone that NPR could not rehire her due to alleged complications with her visa status.  In his email, Mr. Harding outlined NPR's initial expectation: after Ms. Zhang's return to China in August 2023, she would complete a DS-160 form, apply for a visa, and the embassy would deny it due to a 10-year re-entry prohibition arising from the rejection of her *nunc pro tunc* application.  NPR claimed they would then seek an INA 212(d)(3) waiver and reapply for her

visa.  Instead, Ms. Zhang's initial embassy appointment resulted in a valid visa stamp regardless of an incorrect answer (i.e., a small error) on her DS-160, which she had completed prior to her departure.  NPR pressured Ms. Zhang to address an allege error on her DS-160, using their own incorrect interpretation of her immigration situation as justification, yet failed to offer sufficient guidance or assistance.  Despite this, Ms. Zhang's H-1B visa remained valid until February 17, 2024, and she was allowed entry into the U.S. without issue or objection from customs officers. However, NPR's legal team erroneously advised Ms. Zhang that her re-entry was based on an invalid visa and emphasized the need to correct the DS-160 before traveling.  Mr. Harding's email further claimed that Ms. Zhang could not work for NPR under this "improperly granted" visa, overlooking the fact that she was legally present in the U.S. and had followed standard immigration procedures.  This communication, which was copied to Elizabeth A. Allen (Chief Legal Officer) and Selyn Hong (Chief People Officer), marked the last official communication from NPR regarding Ms. Zhang's employment status, leaving her unsupported and in a state of confusion.  Moreover, NPR's actions reveal a lack of guidance and clarity in managing Ms. Zhang's immigration situation. Despite knowing her visa was valid, NPR opted not to rehire her based on their own incorrect misinterpretation of her immigration status, rather than addressing any legitimate issues.

88.    On or about October 6, 2023, Ms. Zhang made personal calls to her immediate team members to inform them of NPR's decision not to rehire her. She refrained from sharing extensive details about the circumstances surrounding her departure but received emotional responses from colleagues who were aware of her challenges and expressed their eagerness for her return.

89.    On or about October 16, 2023, Ms. Zhang officially declined a farewell party offer from her supervisor, Kristin Hume, via phone call. Later that day, Kristin Hume sent a group

communication email to a broader audience regarding Ms. Zhang's departure. The tone of the

email was vague and ambiguous; given that many at NPR were aware of Ms. Zhang's mother's

passing, it appeared as though NPR was using her mother's death as a pretext to obscure the true

circumstances of her unexpected termination.

90.    On or about November 3, 2023, Ms. Zhang had an in-person conversation with

NPR's Chief People Officer, Selyn Hong.  During this meeting, Ms. Zhang disclosed that she had

sought a second legal opinion regarding her H-1B visa situation.  Ms. Hong expressed surprise but

indicated a willingness to support Ms. Zhang's return and suggested exploring ways to "clean the

record" on the DS-160 form, expressing openness to assisting with this process. However, Ms.

Hong also informed Ms. Zhang that she was ineligible for any severance pay, despite being

terminated without cause after nearly nine years of service to NPR.  This decision was particularly

egregious, given Ms. Zhang's long-standing dedication to the organization, including through

significant personal hardships, such as the loss of her mother and the complexities of her visa

situation.  Furthermore, Ms. Hong was the only person at NPR to mention severance, which is a

standard practice in such situations.  The lack of clarity from others and their apparent belief that

Ms. Zhang could not (and would not) seek legal protection only added to the unjust nature of the

decision.  Additionally, Ms. Hong disclosed that the Chief Marketing Officer, Michael Smith, had

performed poorly in his role and had been notably unsupportive, evidenced by his failure to reach

out to Ms. Zhang since May 2023.  This lack of empathy from senior leadership underscores

NPR's neglect of Ms. Zhang's well-being and career. Finally, Ms. Hong revealed she would be

leaving NPR by early next year to join the American Chemical Society.  This further highlighted

the organizational instability and lack of continuity in NPR's leadership, contributing to the

mishandling of Ms. Zhang's situation.

91.    On or about December 8, 2023, Ms. Zhang's attorney sent a formal Demand Letter

to NPR's CEO John Lansing, Head of HR Selyn Hong, and Labor Attorney Stuart Harding. A slightly corrected version of the letter was sent on December 11, 2023.

92.    On or about December 11, 2023, NPR publicly posted the position of Brand Director, using an identical job description that Ms. Zhang had drafted in collaboration with her former supervisor, Kristin Hume, nearly two years prior.  However, the posting included an approximately 16.4% salary increase—from $143,500.00 (Ms. Zhang's previous salary) to $167,000.00—indicating NPR's intention to hire a replacement shortly after receiving the demand letter from Ms. Zhang's attorney.  Despite Ms. Zhang's attorney's request to remove the job posting due to ongoing negotiations, NPR refused to comply, effectively terminating any chance for productive discussions.

93.    On or about January 3, 2024, NPR's labor lawyer, Anika Steffen, began making firs-time allegations against Ms. Zhang, alleging "lapses in professionalism and refusal to follow protocols" as justification for Ms. Zhang's termination, but did not provide any evidence of such accusations, nor did she provide any negative reviews or bad performance reports for Ms. Zhang. These baseless allegations occurred shortly after a call with Ms. Zhang's attorney, during which Ms. Steffen had described Ms. Zhang as a "rising star" within NPR, indicating an attempt to later take back the praising of Ms. Zhang, and shifting the narrative from Ms. Zhang's consistently-recognized stellar work performance to a fabricated rationale for Ms. Zhang's termination.

94.    On or about January 10, 2024, NPR's labor lawyer, Anika Steffen, sent Ms. Zhang's attorney the USCIS Change of Status Denial Letter for her H-1B petition. This was the first time NPR shared this document, 132 days after NPR had received it on August 30, 2023. The Change of Status Denial Letter revealed that NPR's failure to file Ms. Zhang's change of status request in a timely manner was due to administrative errors, including a forgotten expiration report by NPR's legal counsel and issues with NPR's I-9 re-verification system caused by HR

staff turnover. USCIS determined these errors did not meet the "extraordinary circumstances" standard required to excuse the late filing, attributing the lapse entirely to NPR's negligence.

95.    On or about January 22, 2024, NPR's former Head of HR, Selyn Hong, began her new role as Executive Vice President of Human Resources at the American Chemical Society.

96.    On or about January 24, 2024, NPR announced that Katherine Maher will begin her term as CEO on March 25,2024 succeeding John Lansing, who has served as Chief Executive Officer and president since 2019.

97.    On or about January 31, 2024, former Chief People Officer, Selyn Hong, known for maintaining a close relationship with Anika Steffen, reached out to Ms. Zhang via her personal phone with the message: "*Hi Wanyu, you've been in my thoughts and prayers. I hope all is well with you.*"

98.    On or about February 5, 2024, Ms. Zhang's attorney filed a report with the Department of Justice (DOJ) Immigrant and Employee Rights (IER) section by completing both the online form and email submission.

99.    On or about February 9, 2024, Ms. Zhang's attorney submitted additional documentation to DOJ paralegal specialist Alexis Kloiber to support her case. Later, Ms. Zhang's attorney was informed that her specific situation did not fall within IER's jurisdiction as it involved procedural negligence rather than discrimination under their enforcement scope.

100.    On or about February 26, 2024, Ms. Zhang and her attorney filed a formal complaint with the Equal Employment Opportunity Commission (EEOC). The EEOC confirmed that NPR would be informed within the next ten days.

101.    On or about February 29, 2024, the EEOC confirmed Ms. Zhang's complaint and approved mediation as an option for resolution.

102.    On or about March 1, 2024, the EEOC notified NPR's legal team (Anika Steffen

and Selyn Hong) about the charge filed by Ms. Zhang.

103.    On or about March 12, 2024, Ms. Zhang's attorney filed an additional complaint with the D.C. Office of Human Rights (OHR) and mailed another complaint to the Department of Labor (DOL) Wage and Hour Division (WHD). On the same day, Ms. Zhang signed agreements for mediation and confidentiality on the EEOC public portal.

104.    On or about March 20, 2024, EEOC mediator Kevin Coleman confirmed that NPR had declined mediation. As a result, the case was moved to the EEOC Investigation Unit.

105.    On or about April 3, 2024, the D.C. Office of Human Rights updated Ms. Zhang on her case status, stating it was still under review and would typically take 30–40 business days for a decision.

106.    On or about April 5, 2024, Ms. Zhang emailed EEOC Investigator Robert Hersey to inquire about the status of her case and to request NPR's position statement.  On the same day, her former supervisor, Kristin Hume, extended an offer for the Brand Director position to Russell Gossett, a middle-aged Caucasian male and former colleague of Kristin Hume at The Atlantic. The offer included a salary increase of approximately 16.4% as compared to Ms. Zhang's prior compensation, despite the fact that the responsibilities remained exactly the same. This salary increase further highlights the unfair and unspoken treatment Ms. Zhang has faced since 2019.  As the first and only non-Caucasian director in the creative and brand team, this situation serves as a clear and undeniable example of discriminatory behavior against Ms. Zhang.  Ms. Zhang has had to perform her job without the appropriate pay or title, continuously proving herself, while others are offered higher pay for doing the same job.  The double standard is both loud and clear.

107.    On or about April 15, 2024, the DOL Wage and Hour Division rejected Ms. Zhang's complaint due to jurisdictional limitations.

108.    On or about April 22, 2024, Ms. Zhang emailed NPR CEO Katherine Maher at

8:32 AM, providing supporting documentation and seeking to negotiate solutions to her case, but received no response. Later that afternoon, Ms. Zhang's attorney received an email from Anika Steffen instructing that Ms. Zhang should not contact NPR leadership directly.

109.    On or about April 23, 2024, the D.C. Office of Human Rights dismissed Ms. Zhang's complaint due to its work-share agreement with the EEOC, meaning the EEOC would handle the case exclusively.

110.    On or about May 6, 2024, through the EEOC portal, Ms. Zhang received NPR's position statement, which was the first written response from NPR regarding her claims, and was given 30 days to prepare a rebuttal.

111.    On or about June 3, 2024, Ms. Zhang confirmed that Russell Gossett had started as NPR's new Brand Director but noted that no internal or external announcement had been made yet regarding his hiring.  Notably, NPR was aware that Ms. Zhang's rebuttal deadline was June 5, 2024, and upon information and belief, NPR deliberately delayed all announcements, likely in an attempt to prevent Ms. Zhang from learning about this hiring.

112.    On or about June 5, 2024, Exactly one year after NPR ended Ms. Zhang's employment due to visa issues, Ms. Zhang submitted her final rebuttal along with 289 pages of evidence, including witness statements, at 10:33 PM ET, through the EEOC portal.

113.    On or about June 6, 2024, Nohemi Enriquez, a newly assigned EEOC investigator for Ms. Zhang's case, confirmed receipt of Ms. Zhang's rebuttal package via email.

114.    On or about June 18, 2024, Kristin Hume sent a BCC email announcing Russell Gossett's hiring as Brand Director internally at NPR on the same day NPR Extra published a post welcoming him publicly.  Typically, NPR Extra announcements are made before individuals officially start their new positions, making this timing unusual and likely intentional.

115.    On or about June 28, 2024, NPR included Russell Gossett's hiring announcement

in its internal newsletter Nipper News.

116.    On or about July 17, 2024, nearly 10 months after the death of Ms. Zhang's

mother, Ms. Zhang was finally able to begin therapy sessions with Dr. Lea Didion for mental

health support, following the emotional harm caused by NPR during her grieving period for her

mother.  This was the first time Ms. Zhang could prioritize her own mental health, after enduring

the crises she was forced to face.

117.    On or about July 31, 2024, Dr. Didion provided an assessment confirming that

NPR's actions had caused significant emotional harm during a critical period in Ms. Zhang's life.

118.    On or about August 14, 2024: NPR's former CEO, John Lansing, passed away at

the age of 67 in Wisconsin.

119.    On or about August 27, 2024, having met the required investigation timeline of

180 days, Ms. Zhang became eligible to request a right-to-sue letter from the EEOC and contacted

EEOC Investigator Nohemi Enriquez for an update on her case status.

120.    On or about September 6, 2024, EEOC Investigator Nohemi Enriquez called Ms.

Zhang to provide an update on her case status and emphasized patience due to thorough analysis

required by EEOC procedures.

121.    On or about October 24, 2024, one of Ms. Zhang's witnesses at NPR reportedly

overheard discriminatory remarks made by a non-legal staff member who is closely associated

with labor attorney Anika Steffen.  This staff member referred to Ms. Zhang as an "illegal

Chinese immigrant" and questioned how Ms. Zhang could dare accuse NPR of discrimination.

This defamatory comment is particularly egregious, as it appears to stem from confidential

information shared inappropriately by NPR's legal team.  Such a breach of confidentiality,

especially when it involves sharing sensitive details with non-legal employees, reflects unethical

behavior that undermines the integrity of the legal process.

122.    On or about December 5, 2024, EEOC Investigator Nohemi Enriquez emailed Ms. Zhang and her attorney to schedule a meeting regarding her case status for December 9, 2024 at noon EST.

123.    On December 9, 2024, Following a video meeting with Investigator Nohemi Enriquez at the EEOC, the EEOC issued a right-to-sue letter to Ms. Zhang and her attorney, concluding the administrative process after nearly ten months (287 days) since filing her complaint on February 26, 2024, and providing ninety (90) days for Ms. Zhang to file a lawsuit against NPR (i.e., a lawsuit must be filed by March 9, 2025).  The letter was also CC'd to NPR's labor attorney, Anika Steffen, indicating that NPR was informed of Ms. Zhang's eligibility to pursue legal action.  Despite this notification and the prolonged investigation period, NPR made no attempt to communicate or engage with Ms. Zhang or her attorney throughout the entire process.

## BRIEF SUMMARY OF FACTS

124.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 123 hereof, as if fully set forth herein.

125.    Throughout her employment at NPR, Ms. Zhang acted in good faith, trusting NPR to manage her visa status correctly.  However, NPR's failure to do so has led to significant personal and professional hardships for Ms. Zhang.  Despite knowing her visa status since she joined as an intern in 2014, NPR did not address the issue of Ms. Zhang's immigration status during the time period spanning from July 22, 2019 until May 15, 2023, when NPR halted her work and initiated another I-9 verification.

126.    NPR's oversight regarding Ms. Zhang's immigration status occurred during a period of significant change, as Ms. Zhang's STEM OPT visa expired on February 17, 2021, amidst the chaotic COVID-19 era when policies, including those of USCIS, were frequently

changing.  At the same time, NPR was undergoing restructuring, affecting multiple departments, including HR.  Despite her expired visa status, NPR continued to pay and promote Ms. Zhang without raising any concerns from February 17, 2021, to May 15, 2023.  However, in May 2023, NPR's legal and HR teams initiated I-9 verification, marking the first such action since 2019, and subsequently halted her work, citing an overstayed status. They offered to assist with Ms. Zhang's H1B visa application, including a *nunc pro tunc* request to rectify their oversight as an employer responsible for maintaining employee paperwork. USCIS approved the I-129 petition, granting Ms. Zhang an H1B visa effective from August 30, 2023, to February 17, 2024, covering a total of 1,095 days from February 18, 2021, to February 17, 2024, thus fulfilling a three-year term and in essence approving Ms. Zhang's H-1B status retroactively.  However, the USCIS Change of Status Denial Letter confirmed that NPR's failure to timely file Ms. Zhang's change of status request was due to administrative errors, including a forgotten expiration report by NPR's legal counsel and issues with NPR's I-9 re-verification system caused by HR staff turnover.  USCIS determined these errors did not meet the "extraordinary circumstances" standard required to excuse the late filing, attributing the lapse entirely to NPR's negligence.  Nevertheless, it is puzzling that after supporting Ms. Zhang's visa application, NPR decided not to rehire her despite her valid H-1B Visa.  This decision appeared to be motivated by NPR's desire to avoid potential liabilities associated with their earlier administrative errors.

127.    Furthermore, by not providing Ms. Zhang with any severance package, NPR's actions seem punitive and blame-shifting.  It appears that NPR likely assumed Ms. Zhang would not pursue legal action and that her visa would expire by February 17, 2024, leading to her return to China.  This assumption is reinforced by NPR's failure to share the USCIS Change of Status Denial Letter with Ms. Zhang before she hired an attorney, and their urging for her to remain in China and not return to the U.S.  As an employer, NPR is unwilling to acknowledge and take

responsibility for its own mistakes and discriminatory behavior, instead choosing to shift the

burden onto Ms. Zhang, thereby tarnishing her reputation with false allegations.

### COUNT ONE
**Violation of Title VII of the Civil Rights Act of 1964,**
**as amended, 42 U.S.C. Sec. 2000e et seq.**
**(Discrimination)**

128.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 127

hereof, as if fully set forth herein.

129.    If an employer's refusal to accept a valid visa is based on national origin or

citizenship status, the employee has a claim for discrimination under Title VII of the Civil Rights

Act of 1964.

130.    From February 17, 2014 through May 14, 2023, Plaintiff had worked for

Defendant in various capacities without issue, and had actually received many awards, accolades,

and promotions due to her stellar performance.

131.    From February 17, 2014 through May 14, 2023, Plaintiff had been through five I-9

verification processes with Defendant.

132.    On May 15, 2023, Defendant began another I-9 verification process for Plaintiff in

order to pursue a change of status application for an H-1B Visa for Plaintiff.

133.    On May 23, 2023, Defendant's legal representative instructed Plaintiff to stop

working while NPR handled her change of status application for an H-1B Visa, but Plaintiff

assured that she would be rehired after the visa application process was complete.

134.    On September 15, 2023, Plaintiff shared with Defendant her most recent valid H-

1B Visa that she had obtained from USCIS.

135.    However, Defendant refused to acknowledge Plaintiff's valid immigration status

under the valid H-1B Visa, and refused to continue with Plaintiff's employment at NPR.

136.    This refusal to recognize Plaintiff's valid visa is a direct case of discriminatory

behavior that resulted in damages to Plaintiff with regard to her reputation and economic

opportunity, as well as her ability to remain in the United States legally.

137.    As a further result of Defendant's unlawful discriminatory actions, Plaintiff has

suffered compensatory damages by reason of future pecuniary loss, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages for

which she hereby sues.

138.    At all times relevant to this action, Defendant acted with malice or reckless

indifference to Perry's protected rights; thus entitling her to punitive damages.

139.    Punitive damages may be awarded to punish an employer who has committed an

especially malicious or reckless act of discrimination, and here, by denying the validity of

Plaintiff's apparent valid H-1B Visa issued by USCIS, Defendant acted in a malicious and

reckless discriminatory manner against Plaintiff.

140.    Plaintiff is therefore entitled to compensatory damages and punitive damages in

amounts to be determined at trial, but presently, Plaintiff is requesting: (1) **back pay** in the

amount of  **$101,317.29** based on Plaintiff's base salary of $143,500.00 per year, for the period

between June 5, 2023 through February 17, 2024, which is 36 weeks (i.e., valued at $99,346.14),

plus 5 days (i.e., valued at $1,971.15); (2) **future pay** in the amount **$501,000.00** based on NPR's

advertised increase in the salary of Plaintiff's position to $167,000.00 per year; (3) **lost benefits**

of salary increases, medical benefits, and the like, in an estimated amount of **$200,000.00**; (4)

**punitive damages** in the amount of **$500,000.00** based on Defendant's discriminatory practices;

and (5) reasonable **attorney's fees** and court costs associated with the filing of this complaint.

**<u>COUNT TWO</u>**
**Violation of Title VII of the Civil Rights Act of 1964,**
**as amended, 42 U.S.C. Sec. 2000e et seq.**
**(Violation of Immigration and Nationality Act of 1965 Based on Unfair Documentary**
**Practices under 8 U.S.C. § 1324b)**

141.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 140 hereof, as if fully set forth herein.

142.    If an employer refusal to accept a valid visa is based on national origin or citizenship status, the employee has a claim for discrimination under Title VII of the Civil Rights Act of 1964.

143.    Additionally, discrimination based on citizenship status is expressly prohibited by the Immigration and Nationality Act's (INA) anti-discrimination provision, 8 U.S.C. § 1324b. The law prohibits: 1) citizenship status discrimination in hiring, firing, or recruitment or referral for a fee; 2) national origin discrimination in hiring, firing, or recruitment or referral for a fee; 3) unfair documentary practices during the employment eligibility verification, Form I-9 and E-Verify processes; and 4) retaliation or intimidation.

144.    The USCIS Change of Status Denial Letter for Plaintiff confirmed that Defendant's failure to timely file Plaintiff's change of status request was due to administrative errors, including a forgotten expiration report by Defendant's legal counsel and issues with Defendant's I-9 re-verification system caused by HR staff turnover.

145.    USCIS determined these errors did not meet the "extraordinary circumstances" standard required to excuse the late filing, attributing the lapse entirely to Defendant's gross negligence in handling Plaintiff's visa application.

146.    Thus, but-for Defendant's improper mishandling of Plaintiff's Form I-9 and E-Verify processes by submitting the application 877 days too late, Plaintiff would not have lost her right to continue working for Defendant on an H-1B Visa past February 17, 2024.

147.    Plaintiff is therefore entitled to compensatory damages and punitive damages in amounts to be determined at trial, but presently, Plaintiff is requesting: (1) **back pay** in the amount of **$101,317.29** based on Plaintiff's base salary of $143,500.00 per year, for the period

between June 5, 2023 through February 17, 2024, which is 36 weeks (i.e., valued at $99,346.14), plus 5 days (i.e., valued at $1,971.15); (2) **future pay** in the amount **$501,000.00** based on NPR's advertised increase in the salary of Plaintiff's position to $167,000.00 per year; (3) **lost benefits** of salary increases, medical benefits, and the like, in an estimated amount of **$200,000.00**; (4) **punitive damages** in the amount of **$500,000.00** based on Defendant's discriminatory practices; and (5) reasonable **attorney's fees** and court costs associated with the filing of this complaint.

**<u>COUNT THREE</u>**
**EMPLOYER MISCONDUCT – GROSS NEGLIGENCE**

148.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 147 hereof, as if fully set forth herein.

149.    Gross negligence is defined as a breach of a duty of care resulting in harm or loss, and it is characterized by willful, wanton, and reckless conduct.

150.    To prove gross negligence, one must establish the duty of care, a significant breach of that duty, causation, and resulting damages.

151.    The USCIS Change of Status Denial Letter for Plaintiff confirmed that Defendant's failure to timely file Plaintiff's change of status request was due to administrative errors, including a forgotten expiration report by Defendant's legal counsel and issues with Defendant's I-9 re-verification system caused by HR staff turnover.

152.    USCIS determined these errors did not meet the "extraordinary circumstances" standard required to excuse the late filing, attributing the lapse entirely to Defendant's gross negligence in handling Plaintiff's visa application.

153.    But-for the involvement of Ms. Zhang's attorney, Ms. Zhang would never have known about the Change of Status Denial Letter from USCIS, because she would have been forced to leave the United States.

154.    The bad-faith action of Defendant attempting to conceal its negligence and errors

with regard to properly filing the visa paperwork for Ms. Zhang is absolutely unconscionable, and this type of behavior must be penalized to prevent it from happening to others in the future.

155.    Therefore, Defendant had a contractual duty to Plaintiff as her employer to keep her H-1B status valid, breached this duty by failing to timely file Plaintiff's visa paperwork and perform the appropriate I-9 verification, and therefore caused Plaintiff's legal status in the United States to end and her employment capabilities to terminate, which severely damaged Plaintiff.

156.    Plaintiff is therefore entitled to compensatory damages and punitive damages in amounts to be determined at trial, but presently, Plaintiff is requesting at least **punitive damages** in the amount of **$5,000,000.00** from Defendant based on Defendant's grossly-negligent misconduct.

<u>**COUNT FOUR**</u>
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

157.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 156 hereof, as if fully set forth herein.

158.    An employee may sue his or her employer for wrongful discharge when his or her discharge violates a clear mandate of public policy. *See Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (1991). Generally, these cases fall into three categories: (1) the employee is fired for refusing to engage in illegal conduct; (2) the employee is fired for exercising a statutory right; or (3) the employee is fired for reporting the illegal conduct of his or her employer or co-worker.  If the employer's actions violate immigration laws or anti-discrimination laws, the employee may argue that their termination was against public policy.

159.    Here, Plaintiff was fired for attempting to exercise her statutory right to enjoy the benefits of her valid H-1B Visa administered by the State Department, and thus, Defendant also violated immigration laws.

160.    Specifically, by denying the validity of Plaintiff's valid H-1B Visa, Defendant

violated public policy.

161.    Plaintiff is therefore entitled to compensatory damages and punitive damages in amounts to be determined at trial, but presently, Plaintiff is requesting: (1) **back pay** in the amount of  **$101,317.29** based on Plaintiff's base salary of $143,500.00 per year, for the period between June 5, 2023 through February 17, 2024, which is 36 weeks (i.e., valued at $99,346.14), plus 5 days (i.e., valued at $1,971.15); (2) **future pay** in the amount **$501,000.00** based on NPR's advertised increase in the salary of Plaintiff's position to $167,000.00 per year; (3) **lost benefits** of salary increases, medical benefits, and the like, in an estimated amount of **$200,000.00**; (4) **punitive damages** in the amount of **$500,000.00** based on Defendant's discriminatory practices; and (5) reasonable **attorney's fees** and court costs associated with the filing of this complaint.

**COUNT FIVE**
**PROMISSORY ESTOPPEL**

162.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 161 hereof, as if fully set forth herein.

163.    A worker may be able to challenge a termination on the grounds of promissory estoppel if she can prove (1) the existence of a promise, (2) on which she reasonably relied, (3) to her detriment.  *See Bible Way Church of Our Lord Jesus Christ v. Beards*, 680 A.2d 419 (D.C. 1996), citing Bender v. Design Store Corp., 404 A.2d 194 (1979).

164.    Here, there was promissory estoppel based on a breach of an implied contract between Plaintiff and Defendant, wherein Defendant's actions in attempting to secure an H-1B Visa for Plaintiff clearly demonstrated an intent to keep Plaintiff as an employee at least until 2027.

165.    Plaintiff is therefore entitled to compensatory damages and punitive damages in amounts to be determined at trial, but presently, Plaintiff is requesting: (1) **back pay** in the amount of  **$101,317.29** based on Plaintiff's base salary of $143,500.00 per year, for the period

between June 5, 2023 through February 17, 2024, which is 36 weeks (i.e., valued at $99,346.14),

plus 5 days (i.e., valued at $1,971.15); (2) **future pay** in the amount **$501,000.00** based on NPR's

advertised increase in the salary of Plaintiff's position to $167,000.00 per year; (3) **lost benefits**

of salary increases, medical benefits, and the like, in an estimated amount of **$200,000.00**; (4)

**punitive damages** in the amount of **$500,000.00** based on Defendant's discriminatory practices;

and (5) reasonable **attorney's fees** and court costs associated with the filing of this complaint.

**COUNT SIX**
**FRAUDULENT MISREPRESENTATION**

166.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 165

hereof, as if fully set forth herein.

167.    Fraud is defined as intentional deception or misrepresentation used to benefit

oneself or others.

168.    As stated above, or about August 30, 2023, Plaintiff discovered conflicting updates

on USCIS's portal showing both approval and denial notices for her H-1B petition, which

confused Plaintiff, so she reached out to Plaintiff's legal counsel, Mr. Harding, via text message

for clarification.

169.    Mr. Harding stated that Plaintiff's petition was approved, but then claimed there

were uncertainties about her ability to return to the U.S., citing an alleged travel ban.

170.    However, Mr. Harding had lied to Plaintiff, as there was no travel ban in place at

that time, and Mr. Harding was instead attempting to conceal the truth from Ms. Zhang, that NPR

had actually missed the filing deadline for Ms. Zhang's Form I-129, Petition for a Nonimmigrant

Worker, by 877 days, thus resulting in a denial of change of the status from USCIS.

171.    Even on August 30, 2023, when USCIS issued both the I-129 approval email and

the Change of Status Denial Letter, neither Mr. Harding nor NPR's hired legal counsel shared

these documents with Plaintiff.

172.    It was only at the last minute, just before her U.S. embassy interview on September 12, 2023, that NPR finally disclosed the approval email.

173.    Furthermore, Defendant actively withheld the Change of Status Denial Letter from Plaintiff until after she retained legal representation and sent an official demand letter on January 10, 2024, making it evident that NPR was deliberately hiding their negligent error in an attempt to defraud Plaintiff, thus misrepresenting the real reason for Defendant's refusal to rehire her.

174.    These gross misrepresentations and fraudulent activities demonstrate Defendant's bad-faith actions towards Plaintiff, and there is no doubt that these actions were willful and malicious in nature.

175.    Plaintiff is therefore entitled to compensatory damages and punitive damages in amounts to be determined at trial, but presently, Plaintiff is requesting: (1) **back pay** in the amount of **$101,317.29** based on Plaintiff's base salary of $143,500.00 per year, for the period between June 5, 2023 through February 17, 2024, which is 36 weeks (i.e., valued at $99,346.14), plus 5 days (i.e., valued at $1,971.15); (2) **future pay** in the amount **$501,000.00** based on NPR's advertised increase in the salary of Plaintiff's position to $167,000.00 per year; (3) **lost benefits** of salary increases, medical benefits, and the like, in an estimated amount of **$200,000.00**; (4) **punitive damages** in the amount of **$500,000.00** based on Defendant's fraudulent misrepresentation; and (5) **treble damages** with regard to all of the above based on Defendant's willful fraudulent activities; and (6) reasonable **attorney's fees** and court costs associated with the filing of this complaint.

<u>**COUNT SEVEN**</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

176.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 175 hereof, as if fully set forth herein.

177.    To recover damages for the tort of intentional infliction of emotional distress, the

plaintiff must show "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.' " *Howard University v. Best,* 484 A.2d 958, 985 (D.C.1984) (citations omitted).

178.    As a result of Defendant's malicious actions during the time when Plaintiff was mourning the recent death of her mother, including, but not limited to, promises broken by Defendant to rehire Plaintiff, fraudulent misrepresentations committed by Defendant in an attempt to cover up Defendant's culpability with regard to missing the due date for Plaintiff's H-1B Visa application, discriminatory actions by Defendant against Plaintiff by unilaterally not accepting her H-1B Visa as valid, and uncertainties experienced by Plaintiff with regard to her ability to remain in the United States as a result of Defendant's refusal to rehire her, Plaintiff became severely depressed.

179.    Defendant's aforementioned actions were extreme and outrageous, and they both intentionally and recklessly caused Plaintiff severe emotional distress.

180.    On or about July 17, 2024, nearly 10 months after the death of Ms. Zhang's mother, Ms. Zhang was finally able to begin therapy sessions with Dr. Lea Didion for mental health support, following the emotional harm caused by NPR during her grieving period for her mother.

181.    On or about July 31, 2024, Dr. Didion provided an assessment confirming that NPR's actions had caused significant emotional harm during a critical period in Ms. Zhang's life.

182.    Plaintiff is therefore entitled to compensatory damages and punitive damages in amounts to be determined at trial, but presently, Plaintiff is requesting: (1) **medical expenses** related to therapy resulting from the emotional distress inflicted by Defendant on Plaintiff in an amount to be determined at the close of this case, but at least **$2000.00**; (2) **pain and suffering** damages in the amount of **$200,000.00** resulting from the emotional distress inflicted by

Defendant on Plaintiff during the time that Plaintiff was mourning her mother's recent death; and

(3) **punitive damages** in the amount of **$500,000.00**.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF WANYU ZHANG respectfully requests this Honorable

Court to enter judgment as follows:

**1. Compensatory Damages:**

a.    Award Plaintiff compensatory damages for **back pay** in the amount of

**$101,317.29** based on Plaintiff's base salary of $143,500.00 per year, for

the period between June 5, 2023 through February 17, 2024, which is 36

weeks (i.e., valued at $99,346.14), plus 5 days (i.e., valued at $1,971.15).

b.    Award Plaintiff compensatory damages for **future pay** in the amount

**$501,000.00** based on NPR's advertised increase in the salary of

Plaintiff's position to $167,000.00 per year.

c.    Award Plaintiff **lost benefits** of salary increases, medical benefits, and the

like, in an estimated amount of **$200,000.00**.

d.    Award Plaintiff **medical expenses** related to therapy resulting from the

emotional distress inflicted by Defendant on Plaintiff in an amount to be

determined at the close of this case, but at least **$2000.00**.

e.    Award Plaintiff **pain and suffering** damages in the amount of

**$200,000.00** resulting from the emotional distress inflicted by Defendant

on Plaintiff during the time that Plaintiff was mourning her mother's

recent death.

**2. Punitive Damages:**

    a.    Award Plaintiff **punitive damages** in the amount of **$5,500,000.00** for

Defendant's deliberate indifference, bad faith actions, grossly-negligent

business practices, and unlawful discriminatory conduct.

**3. Treble Damages:**

    a.    Award Plaintiff treble damages where applicable, based on Defendant's

willful fraudulent misrepresentations and behavior.

**4. Attorney's Fees and Costs:**

    a.    Award Plaintiff reasonable attorney's fees, costs, and expenses incurred in

bringing this action, pursuant to applicable D.C. laws.

**5. Such Further Relief:**

    a.    Grant such further relief as this Court deems just, equitable, and proper.

Dated: March 8, 2025               Respectfully submitted,

*Lev Iwashko*

Lev Ivan Gabriel Iwashko, Esq.
DC Bar No. 1022054
The Iwashko Law Firm, PLLC
1250 Connecticut Ave., NW
Suite 700, PMB 5165
Washington, DC 20036
(202)441-5043
Lev@iwashkoLaw.com
Leviwashko@gmail.com
*Attorney for Plaintiff*

## VERIFICATION

(Signed and Notarized in the Commonwealth of Virginia, County of Fairfax)

I ___Wanyu Zhang_____, being first duly sworn, on oath, depose and

say that I have read the foregoing pleadings in the above-captioned case (WANYU ZHANG v.

NATIONAL PUBLIC RADIO, INC.) by me subscribed, and upon penalty of perjury with regard

to the laws of the United States of America and the District of Columbia, I affirm that the facts

therein stated are true to the best of my knowledge, information, and belief.

_____
Wanyu Zhang
*Plaintiff*

Subscribed and sworn to before me this 8th day of March_____, 20 25

_____
Notary Public

CAROL HENAO
NOTARY PUBLIC
REGISTRATION # 8076585
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
SEPTEMBER 30, 2027

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 8th day of March 2024, a true and correct copy of the foregoing *VERIFIED COMPLAINT* is being served, via private process service, upon the party listed below via its registered agent:

NATIONAL PUBLIC RADIO, INC.
1111 North Capitol St., NE
Washington, DC 20002

Serve On:  Corporation Service Company
1090 Vermont Ave., NW
Washington, DC 20005
Registered Agent for Defendant

_____
Lev Ivan Gabriel Iwashko, Esq.
*Counsel for Plaintiff*