**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WANYU ZHANG | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:25-cv-00699-BAH |
| | ) | |
| NATIONAL PUBLIC RADIO, INC | ) | |
| *d.b.a.* NPR, | ) | |
| | ) | |
|      Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

FACTS AS ALLEGED IN COMPLAINT ........................................................................ 1

LEGAL ARGUMENT ....................................................................................................... 6

    I.       Plaintiff's Title VII Discrimination Claim Fails and Must be Dismissed
           (Count I). ............................................................................................................. 7

    II.      Plaintiff's INA Discrimination Claim Fails (Count II). ......................................... 9

    III.    Plaintiff's Gross Negligence Claim Must be Dismissed (Count III). ................... 10

    IV.    Plaintiff's Wrongful Discharge Claim Fails As A Matter of Law (Count
           IV). ..................................................................................................................... 12

    V.      Plaintiff's Promissory Estoppel Claim Must be Dismissed (Count V) ................ 15

    VI.    Plaintiff's Fraudulent Misrepresentation Claim Fails and Must be
           Dismissed (Count VI). ....................................................................................... 17

    VII.   The Intentional Infliction of Emotional Distress Claim is Insufficient and
           Must be Dismissed (Count VII). ........................................................................ 19

CONCLUSION ................................................................................................................ 21

317469528v.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Int'l,*
    711 F. Supp. 2d 81 (D.D.C. 2010) ........................................................................18

*Adams v. George W. Cochran & Co., Inc.,*
    597 A.2d 28 (D.C. Cir. 1991) ........................................................................12, 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................7

*Atraqchi v. GUMC Unified Billing Servs.,*
    788 A.2d 559 (D.C. 2002) ................................................................................17

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................6, 7

*Bender v. Design Store Corp.,*
    404 A.2d 194 (D.C. 1979) ................................................................................16

*Bernstein v. Fernandez,*
    649 A.2d 1064 (D.C. 1991) ..............................................................................19

*Carl v. Children's Hospital,*
    702 A.2d 159 (D.C. 1997) ................................................................................14

*Carter v. District of Columbia,*
    980 A.2d 1217 (D.C. 2009) ..............................................................................14

*Cooke-Seals v. D.C.,*
    973 F. Supp. 184 (D.D.C. 1997) ........................................................................19

*Crockett v. D.C.,*
    No. CV 16-1357 (RDM), 2020 WL 1821121 (D.D.C. Apr. 10, 2020) ................................21

*Dale v. Thomason,*
    962 F. Supp. 181 (D.D.C. 1997) ........................................................................20

*Demissie v. Starbucks Corp. Off. & Headquarters,*
    19 F. Supp. 3d 321 (D.D.C. 2014) ......................................................................3

*District of Columbia v. Walker,*
    689 A.2d 40 (D.C. 1997) ................................................................................11

317469528v.2

*Duggan v. District of Columbia*,
  783 A.2d 563 (D.C. 2001) ...........................................................................11

*Duncan v. Children's Nat'l Med. Ctr.*,
  702 A.2d 207 (D.C. 1997) ...........................................................................20

*El v. Oparaugo*,
  No. CV 19-3804 (CKK), 2022 WL 2104484 (D.D.C. June 10, 2022) ..................................21

*Espinoza v. Farah Mfg. Co.*,
  414 U.S. 86 (1973).........................................................................................8

*Futrell v. Dep't of Lab. Fed. Credit Union*,
  816 A.2d 793 (D.C. 2003) ...........................................................................21

*Granfield v. Catholic Univ. of Am.*,
  530 F.2d 1035 (D.C. Cir. 1976) ....................................................................16

*Greggs v. Autism Speaks, Inc.*,
  987 F. Supp. 2d 51 (D.D.C. 2014) ................................................................16

*Hawkins v. Washington Metro. Area Transit Auth.*,
  311 F. Supp. 3d 94 (D.D.C. 2018) ................................................................10

*Hernandez v. D.C.*,
  845 F. Supp. 2d 112 (D.D.C. 2012) ..............................................................10

*Hicks v. Assoc. of Am. Med. Colls.*,
  503 F. Supp. 2d 48 (D.D.C. 2007) ................................................................14

*Ho v. Garland*,
  No. CV 20-912 (EGS), 2022 WL 4289667 (D.D.C. Sept. 17, 2022) ........................................3

*Hoffman v. Hill & Knowlton, Inc.*,
  777 F. Supp. 1003 (D.D.C. 1991) .................................................................20

*Homan v. Goyal*,
  711 A.2d 812 (D.C. 1998) ...........................................................................19

*Howard v. Fed. Express Corp.*,
  280 F. Supp. 3d 26 (D.D.C. 2017).................................................................16

*United States ex rel. Joseph v. Cannon*,
  642 F.2d 1373 (D.C. Cir. 1981) ....................................................................17

*Joyner v. Sibley Mem'l Hosp.*,
  826 A.2d 362 (D.C. 2003) ...........................................................................20

317469528v.2

*Kakeh v. United Planning Org., Inc.*,
    537 F. Supp. 2d 65 (D.D.C. 2008) ........................................................................................14

*King v. Kidd*,
    640 A.2d 656 (D.C. 1993) ....................................................................................................20

*Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*,
    949 F. Supp. 13 (D.D.C. 1996) ...............................................................................................8

*LeFande v. District of Columbia*,
    864 F. Supp. 2d 44 (D.D.C. 2012) ........................................................................................15

*Llanos-Senarrilos v. United States*,
    177 F.2d 164 (9th Cir. 1949) ..............................................................................................5, 6

*Lockhart v. Coastal Int'l Sec., Inc.*,
    5 F. Supp. 3d 101 (D.D.C. 2013) ..........................................................................................13

*Lucas v. NCR Corp.*,
    No. CIV.A. 03-2329 (JR), 2005 WL 1121988 (D.D.C. Mar. 31, 2005)..................................11

*Matter of M-*,
    9 I&N Dec. 118 (BIA 1960) ....................................................................................................6

*McManus v. MCI Commc'ns Corp.*,
    748 A.2d 949 (D.C. 2000) ....................................................................................................14

*Myers v. Alutiiq Int'l Sols., LLC*,
    811 F. Supp. 2d 261 (D.D.C. 2011) ......................................................................................15

*Matter of Namio*,
    14 I&N Dec. 412 (BIA 1973) ..................................................................................................6

*Nyunt v. Tomlinson*,
    543 F. Supp. 2d 25 (D.D.C. 2008), *aff'd sub nom. Nyunt v. Chairman, Broad.*
    *Bd. of Governors*, 589 F.3d 445 (D.C. Cir. 2009) ..................................................................7

*Ortberg v. Goldman Sachs Grp.*,
    64 A.3d 158 (D.C. 2013) ......................................................................................................19

*Parnigoni v. St. Columba's Nursery Sch.*,
    681 F. Supp. 2d 1 (D.D.C. 2010) ..........................................................................................15

*Peterson v. AT & T Mobility Servs., LLC*,
    134 F. Supp. 3d 112 (D.D.C. 2015) ......................................................................................13

*Phrasavang v. Deutsche Bank*,
    656 F. Supp. 2d 196 (D.D.C. 2009) ......................................................................................17

iv

*Matter of R-R-*,
  3 I&N Dec. 823 (BIA 1949) .............................................................................5

*Robertson v. District of Columbia*,
  269 A.3d 1022 (D.C. 2022) ...........................................................................14

*Rodriguez v. Lab'y Corp. of AmericaHoldings*,
  13 F. Supp. 3d 121 (D.D.C. 2014) ...........................................................17, 18

*Saucier v. Countrywide Home Loans*,
  64 A.3d 428 (D.C. 2013) ...............................................................................17

*Simms v. D.C.*,
  699 F. Supp. 2d 217 (D.D.C. 2010) ...............................................................10

*Stevens v. Sodexo, Inc.*,
  846 F. Supp. 2d 119 (D.D.C. 2012) ..........................................................13, 14

*Strumsky v. Washington Post Co.*,
  842 F. Supp. 2d 215 (D.D.C. 2012) .................................................................3

*In re U.S. Off. Prods. Co. Sec. Litigat.*,
  251 F. Supp. 2d 58 (D.D.C. 2003) .................................................................16

*In re U.S. Office Prods. Co. Secs. Litig.*,
  251 F. Supp. 2d 77 (D.D.C. 2003) .................................................................15

*Wash. Metro. Area Transit Auth. v. Ferguson*,
  977 A.2d 375 (D.C. 2009) .............................................................................10

*White v. Metro Transit Police Dep't*,
  306 F. Supp. 3d 420 (D.D.C. 2018) .................................................................8

*Wilson v. On the Rise Enters., LLC*,
  305 F. Supp. 3d 5 (D.D.C. 2018) ...................................................................18

**Statutes**

8 U.S.C.A. § 1324b(a)(2)(c) .................................................................................9

42 U.S.C. § 2000e *et seq*. Title VII.......................................................................7, 8

District's Whistleblower Protection Act ...............................................................14

Immigration and Nationality Act, 8 U.S.C.A. § 1324b .....................................9, 10

**Other Authorities**

*11.2 Types of Employment Discrimination Prohibited under the INA*, U.S.
CITIZENSHIP AND IMMIGRATION SERVICES: HANDBOOK FOR EMPLOYERS M-
274 (April 10, 2025), https://www.uscis.gov/i-9-central/form-i-9-
resources/handbook-for-employers-m-274/110-unlawful-discrimination-and-
penalties-for-prohibited-practices/112-types-of-employment-discrimination-
prohibited-under-the-ina ............................................................................................9

https://www.uscis.gov/policy-manual/volume-8-part-j-chapter-3#footnote-29 ............................5

https://www.uscis.gov/working-in-the-united-states/students-and-exchange-
visitors/optional-practical-training-extension-for-stem-students-stem-opt ............................2

Policy Manual, "Chapter 8 - Change of Status, Extension of Stay, Length of
Stay," https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8................................4

Rule 12(b)(6)....................................................................................................................15

317469528v.2

Defendant National Public Radio, Inc. d.b.a. NPR ("NPR" or "Defendant"), by and through the undersigned counsel, hereby submits this memorandum of points and authorities in support of its motion to dismiss Plaintiff's Complaint.

## <u>INTRODUCTION</u>

Plaintiff has filed a seven-count Complaint against NPR, alleging various violations of federal and state law, arising out of Plaintiff's own failure to maintain her own work authorization in the United States. Plaintiff allowed her work authorization to expire in February 2021 and did nothing to secure new work authorization. When NPR discovered in 2023 that Plaintiff's work authorization had expired in February 2021, it offered to file an H-1B petition on Plaintiff's behalf to secure new work authorization for Plaintiff. NPR even requested that federal authorities approve a change in Plaintiff's status *nunc pro tunc* to February 2021 and excuse the fact that Plaintiff had overstayed her visa by 877 days by arguing that NPR, through an administrative error, had not realized Plaintiff's work authorization had expired. However, the government refused to excuse Plaintiff's overstay of her visa because Plaintiff herself has an obligation to maintain her own work authorization and NPR's error could not excuse her own failure to do so.

Plaintiff's procrustean effort to cast her own failure to maintain her work authorization as violations of federal and state law by NPR is completely unavailing. As set forth in detail below, Plaintiff's Complaint fails to state a claim upon which relief can be granted as to any of her claims. Therefore, Defendant respectfully requests that Plaintiff's Complaint be dismissed.

## <u>FACTS AS ALLEGED IN COMPLAINT</u>

Plaintiff Wanyu Zhang moved to the United States from China in 2009 to attend college on an F-1 Student Visa. Compl. ¶ 9. Plaintiff began working for NPR in 2014 and obtained work authorization under her F-1 Student Visa via Optional Practical Training ("OPT") related

to her Bachelor's degree from Indiana University.  Later, she extended her work authorization via STEM OPT pursuant to the same Bachelor's Degree and then her Masters work at Georgetown University.  Compl. ¶¶ 11, 17, 21, 25.  Plaintiff final extension via STEM OPT expired on February 17, 2021.  Compl. ¶ 25.

The Complaint is silent as to what, if anything, Plaintiff did to maintain her work authorization after her STEM OPT work authorization expired on February 17, 2021, or why she did not notice that her work authorization had expired.[1]  The Complaint next discusses Plaintiff's work status in 2023.  Due to an internal error, no one in NPR's People Team received notification that the documentation Plaintiff had provided to NPR to establish her ability to work on the United States had expired in February 2021, which would normally prompt someone to request that Plaintiff submit updated and current work authorization documentation at that time. Compl. ¶ 65.  When this oversight was discovered, Stuart Harding, NPR's Associate General Counsel, Labor & Employment, contacted Plaintiff in mid-May 2023, for her I-9 verification and identification documents.  Compl. ¶ 56.

On May 23, 2023, Plaintiff met with Mr. Harding to discuss her immigration status. Compl. ¶ 57.  Plaintiff was informed that she could not continue to work at NPR because she lacked legal authorization to work in the United States.   On or about June 5, 2023, Plaintiff's employment with NPR ended because she lacked legal authorization to work in the United States.  Compl. ¶¶ 64-65.   On June 12, 2023, NPR sent a separation letter to Plaintiff,

---

[1] An employer's obligations when employing an individual authorized to work through STEM OPT include: to participate in E-Verify, report material changings in the student's employment, such as termination, and provide a formal training program.  Plaintiff, on the other hand, was required to report to her Designated School Officer (DSO) every six months regarding her status.  https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-extension-for-stem-students-stem-opt.  The Complaint does not state that Plaintiff reported to her DSO as required, or if she had, why she would not have known, and done something about the fact that, her STEM OPT work authorization had expired.

documenting her termination from employment due to her inability to complete the I-9

verification as basis for her termination.[2]  Compl. ¶ 65.

It was agreed that NPR would submit a petition for an H-1B visa for Plaintiff.  *Id.*

Compl. ¶¶ 57-69.  As Plaintiff's employer, NPR is the "petitioner" in a request for H-1B status,

which allows employers to hire nonimmigrant workers for specialty occupations, and Plaintiff is

the "beneficiary."  Compl. ¶ 69.  On July 12, 2023, United States Citizenship and Immigration

Services ("USCIS") received the H-1B petition and issued a receipt number.  Compl. ¶ 69.  In

the petition, NPR requested that USCIS change Plaintiff's immigration status on a *nunc pro tunc*

basis, dated back to February 17, 2021, in an attempt to rectify the 877 days in which Plaintiff

overstayed following the expiration of her STEM OPT work authorization.

USCIS issued a Request for Evidence ("RFE") to NPR on July 18, 2023, in which it

requested that NPR as petitioner for Plaintiff's H-1B visa provide additional evidence "to

establish that the beneficiary [Plaintiff] maintained the beneficiary's nonimmigrant status."[3]

NPR responded with a position statement letter on August 22, 2023, in which it documented the

oversight regarding its learning of the expiration of Plaintiff's work authorization via STEM

OPT.  *Id*.  However, there was no justification to offer about why Plaintiff had not noticed her

own work authorization via STEM OPT had expired and maintained her nonimmigrant status.

---

[2] A copy of the separation letter is attached as Exhibit 1 to the Declaration of Stuart Harding ("Harding Decl.").
Plaintiff did not attach a copy of the separation letter to the Complaint.  However, this Court may consider them
without converting the instant motion to a summary judgment motion.  *See e.g., Strumsky v. Washington Post Co.*,
842 F. Supp. 2d 215, 217-18 (D.D.C. 2012) ("where a document is referred to in the complaint and is central to the
plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to
one for summary judgment.") (citations omitted); *Demissie v. Starbucks Corp. Off. & Headquarters*, 19 F. Supp. 3d
321, 324 (D.D.C. 2014) ("In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the
complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a
motion to dismiss for which no party contests authenticity."); *Ho v. Garland*, No. CV 20-912 (EGS), 2022 WL
4289667, at *6 (D.D.C. Sept. 17, 2022) (considers documents cited in memorandum whose authenticity is not
contested by either party without turning the motion to dismiss to a motion for summary judgment).
[3] A copy of the USCIS Change of Status Denial letter referenced in Plaintiff's Complaint is attached hereto as
Exhibit 2 to the Declaration of Stuart Harding.  This Court may consider this document for the reasons stated, supra,
at n. 2.  The Change of Status Denial letter states the grounds for the RFE on page two.

3

*Id.*; Compl. ¶¶ 71, 75. Accordingly, although the USCIS issued Plaintiff an H-1B approval with an expiration date of February 17, 2024, it did not agree to change her status *nunc pro tunc* request to February 17, 2021 because "[t]he submitted evidence is insufficient to demonstrate that the delay in filing the petition was due to extraordinary circumstances beyond your [NPR's] control *or the Beneficiary's [Plaintiff's] control. . . . As such, the Beneficiary [Plaintiff] failed to maintain the beneficiary's nonimmigrant status*." See Exhibit 2; Compl. ¶¶ 78, 80.[4] Compl. ¶¶ 126, 152. Thus, the *nunc pro tunc* change in status denial was due to Plaintiff's failure to maintain her own visa status. Thus, at that time, Plaintiff had a new H-1B work authorization going forward through February 17, 2024, but her 877 day overstay under her prior visa was not excused.

Meanwhile, having left the United States, Plaintiff "independently" completed a DS-160 form, which an applicant must submit in order to obtain a visa stamp on an individual passport. Compl. ¶ 70. On August 11, 2023, Plaintiff made an appointment at the U.S. Embassy in Beijing to obtain a visa stamp on her passport. Compl. ¶ 73. Prior to her departure, NPR notified Plaintiff that there "were uncertainties about her ability to return to the U.S." because she had overstayed her visa by 877 days and traveling internationally while a visa application is pending can cause forfeiture of the application.[5] Compl. ¶ 78. Despite being advised of these uncertainties, the next day, Plaintiff left the United States for China. Compl. ¶ 79. Indeed, Plaintiff had already made an appointment at the U.S. Embassy in Beijing some weeks ago. Compl. ¶ 73.

---

[4] As alleged in the Complaint, Plaintiff's STEM OPT work authorization expired on February 17, 2021, and even if applied for at that time, an H-1B visa would only have been granted for a three-year period – until February 17, 2024. Compl, ¶ 80.

[5] See Policy Manual, "Chapter 8 – Change of Status, Extension of Stay, Length of Stay," https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8 ("If a nonimmigrant travels abroad while their COS application is pending, USCIS considers that COS application abandoned.")

4

In September 2023, Plaintiff received a passport with an H-1B visa stamp, valid through February 17, 2024. Compl. ¶ 81. After learning Plaintiff had obtained a passport with a visa stamp, NPR's counsel questioned whether Plaintiff had accurately filled out the DS-160 form. Had Plaintiff filled it out accurately, the fact that she had overstayed her visa by 877 days and violated her F-1 status by working beyond the expiration of her employment authorization likely would have been flagged by the U.S. embassy in Beijing when she attempted to obtain her passport stamp. Compl. ¶ 82. Plaintiff confirmed that she answered "no" to a question on the DS-160 Form asking whether she had ever been unlawfully present in the United States, overstayed the amount of time granted by an immigration official, or otherwise violated the terms of a United States visa.[6]

After learning this information, NPR sent an email to Plaintiff in late September 2023, informing her that she may need to restart the H-1B visa application process to allow her to resubmit a new (and accurate) DS-160 form. Compl. ¶ 84.  In the event a misrepresentation on a form to USCIS is cited as a reason not to admit someone to the U.S., a defense to inadmissibility due to willful misrepresentation includes timely retracting or recanting the false statement:

> "If an alien timely retracts the statement, the alien is not inadmissible for fraud or willful misrepresentation. For the retraction to be effective, it has to be voluntary and timely. The applicant must correct his or her representation before being exposed by the officer or U.S. government official or before the conclusion of the proceeding during which he or she gave false testimony. A retraction can be voluntary and timely if made in response to an officer's question during which the officer gives the applicant a chance to explain or correct a potential misrepresentation."[7]

---

[6] Plaintiff did not provide NPR with a copy of her DS-160 form, but she did provide a screenshot of this question and answer. It is attached as Exhibit 3 to the Declaration of Stuart Harding. Plaintiff expressly references the DS-160 form in her Complaint and this specific question and answer, Compl. ¶ 82, and therefore this Court may properly consider Exhibit 2 with converting this motion to one for summary judgment. See, *supra*, n.3.

[7] See https://www.uscis.gov/policy-manual/volume-8-part-j-chapter-3#footnote-29 (quoting "If the witness withdraws the false testimony of his own volition and without delay, the false statement and its withdrawal may be found to constitute one inseparable incident out of which an intention to deceive cannot rightly be drawn." See *Llanos-Senarrilos v. United States*, 177 F.2d 164, 165 (9th Cir. 1949); *See Matter of R-R-*, 3 I&N Dec. 823 (BIA

Instead of preparing a new DS-160 form, Plaintiff returned to the United States on October 1, 2023 and attempted to get her job back at NPR.  Compl. ¶ 86.  NPR informed Plaintiff that she would not be rehired because of concerns regarding the fact that the visa stamp on her passport had been procured based on a DS-160 form that contained an inaccurate statement about whether or not she had overstayed her visa and violated her status.  Compl. ¶ 87.  On October 4, 2023, Mr. Harding once again informed Plaintiff that she needed to complete a new DS-160 form.  *Id.*  Plaintiff did not do so.

**Procedural History.**  On February 5, 2024, Plaintiff's counsel filed a report with the Department of Justice Immigrant and Employee Rights ("IER") section.  Compl. ¶ 98. The USDOJ informed Plaintiff that her complaint did not fall under their jurisdiction because her complaint dealt with a procedural issue rather than discrimination.  Compl. ¶ 99.  On February 26, 2024, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), as well as a complaint with the D.C. Office of Human Rights on March 12, 2024. Compl. ¶100, 103.  Plaintiff also filed a complaint the Department of Labor Wage and Hour Division, which was later rejected for being outside the department's jurisdiction.  Compl. ¶¶ 103, 107.  On December 9, 2024, the EEOC issued Plaintiff a Right to Sue Letter.  Compl. ¶ 123. Plaintiff filed the Complaint initiating this lawsuit on March 8, 2025.

## <u>LEGAL ARGUMENT</u>

To survive a motion to dismiss, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must allege sufficient facts to raise a right to relief above the speculative level; it is

---

1949); *See Matter of Namio*, 14 I&N Dec. 412 (BIA 1973), referring to *Matter of M-*, 9 I&N Dec. 118 (BIA 1960) and *Llanos-Senarrilos v. United States*, 177 F.2d 164 (9th Cir. 1949).

317469528v.2

not enough to merely create a mere suspicion of a legally cognizable right of action. *Id.* at 555. Thus, a complaint is properly dismissed for failure to state a claim upon which relief can be granted when the plaintiff fails to provide the grounds of her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. When a complaint fails to "possess enough heft" to show that the pleader is entitled to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 557-58.

Similarly, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. As the Court explained, this plausibility standard is not "a probability requirement." *Id*. Rather, the standard calls for "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

## I. Plaintiff's Title VII Discrimination Claim Fails and Must be Dismissed (Count I).

Plaintiff alleges that NPR violated Title VII, 42 U.S.C. § 2000e *et seq*.,  by discrimination against her on the basis of her citizenship and national origin.  To establish a *prima facie* case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Nyunt v. Tomlinson*, 543 F. Supp. 2d 25, 33 (D.D.C. 2008), *aff'd sub nom. Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445 (D.C. Cir. 2009).  Here, Plaintiff

cannot establish the first and third elements of a *prima facie* case of discrimination under Title VII.

First, regarding her assertion that NPR violated Title VII by discriminating against her on the basis of her citizenship, Plaintiff cannot establish the first element of a *prima facie* case of discrimination because citizenship is not a protected classification under Title VII. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 89 (1973) ("Aliens are protected from illegal discrimination under [Title VII], but nothing in the Act makes it illegal to discriminate on the basis of citizenship or alienage.").

Second, as to Plaintiff's claim that NPR discriminated against her on the basis of her national origin, Plaintiff does not allege any facts in the Complaint that would raise an inference that any actions taken against her by NPR was based on her Chinese national origin. The Complaint does not even suggest that Plaintiff's Chinese national origin was the basis for an adverse employment action. Plaintiff offers no facts that might support an inference of discrimination based on her Chinese citizenship and therefore she fails to state a Title VII claim of national origin discrimination. *See e.g.*, *White v. Metro Transit Police Dep't*, 306 F. Supp. 3d 420, 422 (D.D.C. 2018) (granting motion to dismiss where plaintiff "alleges that he is African–American, but makes no other allegations about race or any alleged racially motivated mistreatment."); *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996) (finding where plaintiff pled only conclusory allegations of national origin discrimination that fail to give raise to inference of discrimination warrants granting motion to dismiss).

For these reasons, Plaintiff's Title VII claim must be dismissed.

## II.    Plaintiff's INA Discrimination Claim Fails (Count II).

Plaintiff asserts in the Complaint that Defendant violated the Immigration and Nationality Act ("INA"), 8 U.S.C.A. § 1324b.  Plaintiff alleges that Defendant failed to timely file a change of status request on Plaintiff's behalf "due to administrative errors" and that "but-for Defendant's improper mishandling" of Plaintiff's change of status request, "Plaintiff would not have lost her right to continue working for Defendant."  Compl. ¶¶ 144, 146.  Even if taken as true, these allegations do not amount to a violation of the INA.

The INA states that "[it] is an unfair immigration-related employment practice for a person or other entity to discriminate against any individual […] with respect to the hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment-- (A) because of such individual's national origin, or (B) in the case of a protected individual […], because of such individual's citizenship status."  8 U.S.C.A. § 1324b.  The INA also prohibits unfair documentary practices, and these practices fall into three general categories:

1) "Requesting that someone produce more or different documents than are required by Form I-9 to establish their identity and employment authorization;"

2) "Requesting that someone present a particular document, such as a Form I-551, Permanent Resident Card, to establish identity and/or employment authorization; and

3) "Rejecting documents that reasonably appear to be genuine and to relate to the person presenting them."[8] There is a permitted exception under the statute; where discrimination of a person's citizenship status is required in order to comply with laws, regulations, or executive orders.

8 U.S.C.A. § 1324b(a)(2)(c).

---

[8] *11.2 Types of Employment Discrimination Prohibited under the INA*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES: HANDBOOK FOR EMPLOYERS M-274 (April 10, 2025), https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/110-unlawful-discrimination-and-penalties-for-prohibited-practices/112-types-of-employment-discrimination-prohibited-under-the-ina.

Plaintiff's allegations in the Complaint that Defendant "mishandled" her change of status request do not form the basis for a violation of Section 1342b of the INA.  Indeed, this is exactly what the Department of Justice confirmed when Plaintiff reported this conduct to them.  Plaintiff alleges in her complaint that her attorney "filed a report with the Department of Justice (DOJ) Immigrant and Employee Rights section."  The IER is a section of the USDOJ that enforces that anti-discrimination provisions of the INA that appear in Section 1324b.  Plaintiff alleges that her attorney was told that Plaintiff's "specific situation did not fall within IER's jurisdiction as it involved procedural negligence rather than discrimination under their enforcement scope."  Compl. ¶¶ 98-99.  In other words, what Plaintiff alleges in the Complaint does not amount to a violation of Section 1324b of the INA.

Because Count II of Plaintiff's Complaint fails to state a claim under Section 1324b of the INA, it must be dismissed.

## III.    Plaintiff's Gross Negligence Claim Must be Dismissed (Count III).

Plaintiff contends that Defendant acted with gross negligence by not timely filing a change of status request on her behalf due to an administrative error.  Compl. ¶ 151.

The elements of a cause of action for negligence under District of Columbia law are "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach."  *Simms v. D.C.*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (*citing Wash. Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009)).[9]

---

[9] There is no cause of action under District of Columbia law for "gross negligence."  Generally, District of Columbia law does not recognize degrees of negligence.  *Hernandez v. D.C.*, 845 F. Supp. 2d 112, 115 (D.D.C. 2012).  District of Columbia courts will consider whether a defendant acted with gross negligence in limited circumstances where gross negligence is a specific element of a claim or defense or for equitable reasons.  *Id*. at 116; *see also Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 105 (D.D.C. 2018).  In such cases, "gross negligence" is defined as "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others."

Plaintiff's negligence claim fails because NPR had no legal duty to maintain or renew Plaintiff's work authorization.  The case *Lucas v. NCR Corp.*, No. CIV.A. 03-2329 (JR), 2005 WL 1121988 (D.D.C. Mar. 31, 2005), is exactly on point.  In that case, the plaintiff was a French citizen working in the United States under an H-1B visa that was set to expire on December 15, 2002.  *Id.* at *2.  Although the plaintiff's visa could not be extended beyond May 15, 2003, both the plaintiff and her employer had mistakenly believed that it could be extended through December 15, 2003.  *Id.*  When the employer filed the request for an extension, it was granted only through May 15, 2003.  Given that her H-1B status had expired on May 15, 2003, and could not be further renewed, the plaintiff was forced to leave her employment with the defendant.

The plaintiff brought claim of negligence against her employer claiming that NCR had a duty to "prepare and file her work permit application in a professional and timely manner."  *Id.* at *3.  The court found that NCR did file her application timely, and an extension was granted until May 15, 2003, and that no matter what else her employer might have done, due to the six-year limit, the H-1B visa never would have been extended beyond May 15, 2003.  In response to the plaintiff's assertion that her employer had a duty to file the request for extension "professionally" and advise her that of the correct extension date so she could make other arrangements (e.g., file for a green card), the court held that "NCR was not Ms. Lucas' lawyer, however; it was her employer in an at-will employment relationship . . . [and] NCR had no duty to ensure her ability to work and live in the United States."  *Id.*

The same is true here.  NPR filed a petition for an H-1B petition for Plaintiff as soon as it became aware her STEM OPT work authorization had expired – something Plaintiff could have

---

*Duggan v. District of Columbia*, 783 A.2d 563, 568 (D.C. 2001) (*citing District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997)).  Even if the District of Columbia recognized a cause of action for gross negligence, NPR did not owe Plaintiff a duty of case and an "administrative error" does not meet the foregoing gross negligence standard.

and should have monitored and informed NPR of herself – and an H-1B petition was approved for Plaintiff through February 17, 2024.   Even if NPR had filed the H-1B petition at the time Plaintiff's STEM OPT work authorization had expired in February 2021, it would not have been granted for more than three years – until February 17, 2024.  Compl. ¶ 80.

Indeed, Federal regulations contemplate that it is the individual who must maintain their nonimmigrant work status.  This was exactly the point made by the USCIS in the Change in Status Denial letter it issued in connection with Plaintiff's H-1B petition when it denied the *nunc pro tunc* request to change Plaintiff's status.  It was Plaintiff's obligation at all times to be mindful of the expiration date of her visa and maintain her work authorization.  Accordingly, for purposes of Count III, NPR did not owe Plaintiff a duty of care with respect to renewing or maintaining her work authorization.

Because NPR did not owe Plaintiff a duty of care as a matter of law, Plaintiff's negligence claim in Count III must be dismissed.[10]

## IV.    Plaintiff's Wrongful Discharge Claim Fails As A Matter of Law (Count IV).

Plaintiff alleges that her termination from NPR constituted a wrongful discharge in violation of public policy because NPR "violated immigration laws or anti-discrimination laws" by "denying the validity of Plaintiff's valid H-1B Visa" and refusing to hire her back in October 2023.  Compl ¶ 160.

Under District of Columbia law, an employer may discharge an at-will employee at any time and for any reason, or for no reason at all.  *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. Cir. 1991).  District of Columbia law does not generally recognize the tort of

---

[10] Moreover, Plaintiff concedes in the Complaint that Mr. Harding and Seyfarth Shaw were acting as counsel for NPR -- not her.  Compl., ¶¶ 53, 56-58, 60, 61, 63, 69, 78, 82, 87. Thus, neither of them owed a legal duty as counsel to Plaintiff.  Plaintiff was at all times free to retain her own counsel regarding her immigration status.

317469528v.2

wrongful discharge.  *See Lockhart v. Coastal Int'l Sec., Inc.*, 5 F. Supp. 3d 101, 106 (D.D.C. 2013); *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 126 (D.D.C. 2012).  A "very narrow exception" to the at-will doctrine has been recognized in this jurisdiction when the "sole reason" for the employee's termination "offends some mandate of public policy that is firmly anchored in either the Constitution or in a statute or regulation which clearly reflects the particular public policy being relied upon."  *Lockhart v. Coastal Int'l Sec., Inc.*, 5 F. Supp. 3d 101, 106 (D.D.C. 2013).

Thus, to assert a wrongful termination claim under District of Columbia law, a plaintiff must allege "that [the plaintiff's] discharge violates a clear mandate of public policy, as expressed in statute, regulations or the Constitution."  *Peterson v. AT & T Mobility Servs., LLC*, 134 F. Supp. 3d 112, 122 (D.D.C. 2015).  In *Adams*, the plaintiff was fired for refusing to violate the law by driving a truck without a required inspection sticker on its windshield.  *Adams*, 597 A.2d at 29.  The D.C. Court of Appeals explained that the plaintiff "was forced to choose between violating the regulation and keeping his job—the very choice which ... he should not have been required to make. Even though the criminal liability facing him was not very great, it was nonetheless unacceptable and unlawful for his employer to compel him to choose between breaking the law and keeping his job."  *Adams*, 597 A.2d at 34.

As a threshold matter, Plaintiff is not even asserting a discharge claim in Count IV, much less a wrongful discharge claim.  Plaintiff's purported wrongful discharge claim relates to NPR's "denial" of her "valid H-1B visa."  However, Plaintiff did not obtain her H-1B work authorization until after she was discharged in June 2023.  Thus, this claim relates to NPR's refusal to rehire Plaintiff in October 2023 – not her discharge months earlier.

Furthermore, Plaintiff does not cite any law that she refused to violate or that she was fired for reporting her employer's wrongdoing as in *Carl v. Children's Hospital*, 702 A.2d 159, 160 (D.C. 1997) when the D.C. Court of Appeals recognized an expansion of the wrongful discharge exception. Rather, Plaintiff bases her wrongful discharge claim on an allegation that NPR engaged in conduct that violates immigration and anti-discrimination laws when it refused to rehire her. However, a plaintiff may not seek relief under a theory of wrongful discharge based upon a statute that carries its own remedy for violation.

"As we have explained, where there is "a specific, statutory cause of action to enforce" a public policy (such as a policy against workplace discrimination and against retaliation based on invocation of rights under the antidiscrimination statute), this court will "defer to the legislature's prerogatives and ... decline to recognize a novel, competing cause of action for wrongful discharge at common law." *Robertson v. District of Columbia*, 269 A.3d 1022, 1033-34 (D.C. 2022). *See, e.g., Carter v. District of Columbia*, 980 A.2d 1217, 1225–26 (D.C. 2009) (declining to create public policy exception where plaintiff's conduct "fell squarely under the aegis of the District's Whistleblower Protection Act," which "provides that an employee aggrieved by a prohibited personnel action may bring a civil action for monetary and equitable relief"); *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000) (refusing to create a public policy exception for claims of discrimination because the District of Columbia Human Rights Act ("DCHRA") already protects the same public policy); *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 126 (D.D.C. 2012) (same); *Hicks v. Assoc. of Am. Med. Colls.*, 503 F. Supp. 2d 48, 55 (D.D.C. 2007) (holding that remedies under the Fair Labor Standards Act and District of Columbia Minimum Wage Act preclude application of wrongful discharge in violation of public policy); *Kakeh v. United Planning Org., Inc.*, 537 F. Supp. 2d 65, 72 (D.D.C. 2008) (noting that

14

the District of Columbia Whistleblower Protection Act, False Claims Act, and District of Columbia False Claims Act contain "specific and significant remed[ies]").  Thus, "[e]ven where there is a showing of a clearly identifiable policy, the [Court] has refused to [set aside] the doctrine of at-will employment where the legislature has already created a specific, statutory cause of action to enforce the public policy at issue." *LeFande v. District of Columbia*, 864 F. Supp. 2d 44, 50 (D.D.C. 2012) (internal quotation marks omitted).

For these reasons, Plaintiff's wrongful discharge claim cannot survive a motion to dismiss, and judgment must be entered in favor of NPR on Count IV.

## V.    Plaintiff's Promissory Estoppel Claim Must be Dismissed (Count V).

In Count V, Plaintiff contends that Defendant's actions in filing an H-1B petition for Plaintiff clearly demonstrated an intent to keep Plaintiff as an employee at least until 2027." Compl. ¶ 164.

 "To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim of promissory estoppel, the plaintiff must establish "(1) the existence of a promise, (2) that the promise reasonably induced reliance on it, and (3) that the promisee relied on the promise to his [or her] detriment." *Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 25 (D.D.C. 2010). "The promise must be definite, as reliance on an indefinite promise is not reasonable." […] [a]nd although a promise 'need not be as specific and definite as a contract, it must still be a promise with definite terms on which the promisor would expect the promisee to rely.'" *Myers v. Alutiiq Int'l Sols., LLC*, 811 F. Supp. 2d 261, 272 (D.D.C. 2011) (*citing In re U.S. Office Prods. Co. Secs. Litig.*, 251 F. Supp. 2d 77, 97 (D.D.C. 2003)).

Plaintiff's allegations in support of her promissory estoppel claim are missing a fundamental element of this claim – that NPR made a promise to Plaintiff.  Plaintiff does not even allege that NPR actually promised her anything; rather, she states that it "demonstrated an

intent" to employ her through 2027.  These allegations are patently insufficient to establish that

Defendant made a promise to employ Plaintiff through 2027 as alleged in the Complaint.  *See*

*e.g.*, *Howard v. Fed. Express Corp.*, 280 F. Supp. 3d 26, 32 (D.D.C. 2017) (dismissing plaintiff's

promissory estoppel claim for failure to allege any promise made by defendant); *In re U.S. Off.*

*Prods. Co. Sec. Litigat.*, 251 F. Supp. 2d 58, 73 (D.D.C. 2003) (dismissing promissory estoppel

claim because there was no promise made and reliance on statements was not reasonable); *see*

*also, Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 55 (D.D.C. 2014) (dismissing

promissory estoppel claim where there was an at-will employment contract in place).

Plaintiff does not even identify any actual statement made by anyone at NPR that NPR

would keep her employed until 2027.  In order to support a promissory estoppel claim, "[t]he

promise must be definite, as reliance on an indefinite promise is not reasonable."  *In re U.S. Off.*

*Prods. Co. Sec. Litigat.*, 251 F. Supp. 2d at 73 (*citing Granfield v. Catholic Univ. of Am.*, 530

F.2d 1035, 1040 (D.C. Cir. 1976)).  Moreover, "though a promise need not be as specific and

definite as a contract, it must still be a promise with definite terms on which the promisor would

expect the promisee to rely."  *Id.* (*citing Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C.

1979)).

Plaintiff's allegation that NPR "demonstrated an intent to keep Plaintiff as employee at

least until 2027" because it attempted to secure H-1B work authorization for her does not even

arguably constitute a promise, much less one on which it would have been reasonable for

Plaintiff to rely.   NPR's statement that it would file an H-1B visa petition on Plaintiff's behalf

does not constitute a promise of guaranteed employment through 2027 nor does it in any way

disclaim or alter Plaintiff's at-will employment status at the time with NPR.  This is especially

true because, at the same time it agreed to file an H-1B petition for Plaintiff, it also informed

Plaintiff that she could no longer work at NPR because she could not provide proof of work authorization in the United States.

Based on the foregoing, Plaintiff has failed to assert any facts that, if proven true, would entitle her to relief under a theory or promissory estoppel, and thus Count V must be dismissed.

## VI.    Plaintiff's Fraudulent Misrepresentation Claim Fails and Must be Dismissed (Count VI).

Plaintiff alleges that Defendant made a fraudulent misrepresentation when an NPR attorney "claimed there were uncertainties about her ability to return to the U.S., citing an alleged travel ban." Compl. ¶ 169. Plaintiff also alleges that NPR failed to provide her with certain documentation related to her requested change in status at the time they were issued. Compl. ¶ 171.

"To plead a *prima facie* claim for fraudulent misrepresentation, a plaintiff must allege "(1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action taken in reliance upon the representation." *Rodriguez v. Lab'y Corp. of AmericaHoldings*, 13 F. Supp. 3d 121, 128–29 (D.D.C. 2014) (*citing Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002)). "A false representation 'is an assertion that is not in accord with the facts.'" *Id.* at 129 (*quoting Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438–39 (D.C. 2013)).

Claims of fraud are subject to a higher pleading standard, such that a plaintiff "must state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *Id.* (*citing United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)); *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 205 (D.D.C. 2009).

As a threshold matter, Plaintiff's fraud claim fails to meet the requisite high pleading standard for fraudulent misrepresentation claims. Plaintiff alleges Mr. Harding told her there were uncertainties about whether she could return to the United States because of a travel ban. However, Plaintiff fails to quote what Mr. Harding actually said to her, why a travel ban would be in place and affect Plaintiff's travels, and the day, time, and manner (e.g., text message, phone call, e-mail, video call) that he said this to her. Instead, Plaintiff only alleges that "Mr. Harding stated that [Plaintiff's] petition was approved, but then claimed there were uncertainties about her ability to return to the U.S., citing an alleged travel ban." Compl. ¶ 78.

Plaintiff's failure to meet the high pleading standard requires dismissal of her claim. *See e.g.*, *Wilson v. On the Rise Enters., LLC*, 305 F. Supp. 3d 5, 18 (D.D.C. 2018) (finding that plaintiff failed to meet higher pleading standard thus dismissing fraud claim where plaintiff provided no specificity about claims made of taking over the business and no approximate dates of when statements were made); *Acosta Orellana v. CropLife Int'l,* 711 F. Supp. 2d 81, 97 (D.D.C. 2010) (dismissing fraud claim for failure to meet pleading standard where "plaintiffs offer virtually no facts pertaining to any alleged fraudulent misrepresentations"); *Rodriguez v. Lab'y Corp. of AmericaHoldings*, 13 F. Supp. 3d 121, 129 (D.D.C. 2014) (dismissing fraud claim for failing to "specify the time, place, or content" of the misrepresentations made by defendant instead only alleging conclusory generalizations).

Furthermore, Plaintiff has not adequately alleged that she relied on Mr. Harding's alleged statement. Despite being told by NPR's counsel that there was uncertainty regarding her ability to reenter the United States if she returned to China, Plaintiff went ahead and returned to China. Comp. ¶ 79. Thus, it is evident from Plaintiff's own actions that she did not rely on NPR's alleged fraudulent misrepresentation about a travel ban. In addition, although Plaintiff alleges

that NPR counsel was "lying" when he made the statement, she has not adequately alleged the falsity of his statement that there were "uncertainties."

For these reasons, Plaintiff's Complaint fails to state a claim upon which relief can be granted as to fraudulent misrepresentation and therefore Count VI must be dismissed.

## VII.    The Intentional Infliction of Emotional Distress Claim is Insufficient and Must be Dismissed (Count VII).

Count VII of Plaintiff's Complaint is a regurgitation of the counts that precede it. Plaintiff alleges that by engaging in the actions that she claims constitute legal violations as alleged in Counts I through VI, NPR intentionally inflicted emotional distress on her.  Compl. ¶ 178.

District of Columbia case law establishes strict tests for the elements of intentional infliction of emotional distress.  *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 n. 17 (D.C. 1991). The elements of an intentional infliction of emotional distress claim are (1) extreme and outrageous conduct that (2) intentionally or recklessly caused (3) severe emotional distress to another.  *Cooke-Seals v. D.C.*, 973 F. Supp. 184, 188 (D.D.C. 1997).  "In order to establish 'extreme and outrageous conduct,' a plaintiff must show that the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (*citing Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)).  "Liability will only be imposed for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.*  This standard is "very demanding" and "infrequently met."  *Cooke-Seals*, 973 F. Supp. at 188.

Plaintiff's IIED claim fails because she does not establish the first element (extreme and outrageous conduct) and third element (a result of severe emotional distress) of the claim. Plaintiff fails to identify any conduct by NPR that rises to the level of "extreme and outrageous conduct" that is required by this tort. Plaintiff's only allegation is that Defendant missed the deadline to apply for her H-1B status and did not rehire her.  Compl. ¶ 178.  This is not the type of conduct that can form the basis for an IIED claim.  Far worse conduct has failed to meet the exacting standard for this tort.  *See, e.g., Joyner v. Sibley Mem'l Hosp.,* 826 A.2d 362 (D.C. 2003) (finding that intentionally closing a door on an employee's hand, in an effort to prevent the employee's departure from a disciplinary meeting, did not amount to "outrageous conduct"); *Duncan v. Children's Nat'l Med. Ctr.,* 702 A.2d 207, 211-12 (D.C. 1997) (finding insufficient evidence of outrageous conduct where employer forced plaintiff to continue to either work in the Blood Bank, where her unborn fetus would be exposed to radiation, or to lose her job); *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997) (claim dismissed where did "not remotely approach the level of severity required for a cause of action for intentional infliction of emotional distress" where defendants had accused plaintiffs "of illegal or otherwise improper activities in the course of their job performance [that] precipitated [their] dismissal"); *King v. Kidd,* 640 A.2d 656, 670-74 (D.C. 1993) (conduct not extreme and outrageous when supervisor failed repeatedly to respond to employee's complaints of sexual harassment); *Hoffman v. Hill & Knowlton, Inc.,* 777 F. Supp. 1003, 1005 (D.D.C. 1991) (granting motion to dismiss because conduct not outrageous where employer intentionally interfered with employee's ability to do job, stated false, pretextual reasons for dismissing an employee knowing it would be communicated to others, and dismissed employee).

In addition, Plaintiff has failed to allege that she suffered severe emotional distress. Plaintiff alleges that she began seeing a therapist to for her mental health. These allegations are too vague to be sufficient to establish an IIED claim. *El v. Oparaugo*, No. CV 19-3804 (CKK), 2022 WL 2104484, at *3 (D.D.C. June 10, 2022) (dismissing IIED claim as too vague where plaintiff pled that her family was "'traumatized' and believed 'their lives were in danger'"); *Futrell v. Dep't of Lab. Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003) (finding that "mental anguish" and "stress" did not rise to the level of severe emotional distress); *Crockett v. D.C.*, No. CV 16-1357 (RDM), 2020 WL 1821121, at *8 (D.D.C. Apr. 10, 2020) (ruling that plaintiff being "pissed off" and distressed by being laughed at did not rise to severe emotional distress).

Based on the facts alleged, Plaintiff's intentional infliction of emotional distress claim fails and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendant requests that its Motion to Dismiss be granted and Plaintiff's Complaint be dismissed in its entirety with prejudice.

DATED:  April 25, 2025                          Respectfully submitted,

                                                SEYFARTH SHAW LLP


                                                By: */s/ Karla Grossenbacher*
                                                     Karla Grossenbacher, D.C. Bar No. 442544
                                                     Elizabeth Harraka
                                                     SEYFARTH SHAW LLP
                                                     975 F Street, N.W.
                                                     Washington, DC  20004-1454
                                                     Telephone:  (202) 463-2400
                                                     Facsimile:  (202) 828-5393
                                                     kgrossenbacher@seyfarth.com
                                                     eharraka@seyfarth.com

                                                *Counsel for Defendant*

317469528v.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2025, the foregoing Memorandum of Points and

Authorities in Support of Defendant's Motion to Dismiss was filed with the Clerk of the Court

and uploaded to the CM/ECF system, which will send notification of such filing to the following

at their e-mail addresses on file with the Court:

> Lev Ivan Gabriel Iwashko, Esq.
> The Iwashko Law Firm, PLLC
> 1250 Connecticut Ave., NW
> Suite 700, PMB 5165
> Washington, D.C. 20036
> *Attorney for Plaintiff*


*/s/ Karla Grossenbacher*
Karla Grossenbacher